459 A.2d 5

**COMMONWEALTH of Pennsylvania**

v.

**Richard Patrick JOHNSON, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 26, 1982.

Filed March 31, 1983.

Arthur R. Sagoskin, Bristol, for appellant.

William F. Merz, Assistant District Attorney, Doyles-town, for appellee.

Before HESTER, WICKERSHAM and POPOVICH, JJ.

HESTER, Judge:

This is an appeal taken from a judgment of sentence entered by the Court of Common Pleas of Bucks County on October 3, 1980. Appellant, Richard P. Johnson, was found guilty by a jury of various counts of possession of a controlled substance, rape, involuntary deviate sexual inter-

course, aggravated assault, simple assault, indecent assault, theft and criminal conspiracy. Appellant was sentenced to concurrent terms of total confinement of not less than five (5) nor more than twelve (12) years in a State Correctional Institution on two counts of rape and two counts of involuntary deviate sexual intercourse; sentence was suspended on the remaining charges of the information. Motions in arrest of judgment and new trial were denied.

The charges stemmed from a repugnant and extenuating ordeal involving one victim and three co-defendants from October 30, 1977, through November 2, 1977. On October 30, 1977, the victim, Betty Jane Vaughan, was living with her mother at 14 Elmer Street, Warminster, Pennsylvania. At approximately 9:30 a.m., Betty Jane's brother, John Graveley, arrived at his mother's residence and asked the victim for gasoline money. In return for receiving the cash, Graveley agreed to take the victim apartment hunting.

As the victim entered the automobile transporting her brother, she discovered appellant and Barbara Graveley waiting inside. Appellant was occupying the driver's seat; the victim took the front passenger seat beside him and John and Barbara Graveley sat in the rear seat. The three co-defendants were related. John Graveley was married to Barbara Graveley and Barbara was appellant's sister.

The victim entered the automobile with a purse containing, inter alia, prescribed valium. When she removed the vial from her purse so that she could ingest one of her daily prescribed allotments, John wrested the valium pills from her grasp and generously distributed them to himself, appellant and Mrs. Graveley. Appellant compelled the victim to swallow three more valium pills. Shortly thereafter, the victim became confused and disoriented, a mental condition in which she remained for four days due to co-defendants' forcible injection of narcotics into her.

Instead of finding an apartment for Mrs. Vaughan alone, co-defendants drove the automobile for hours in the Philadelphia area in search of either an apartment or motel room for the four people to reside. Following an unsuccessful

bid to locate an apartment, Mrs. Vaughan was compelled to approach the registration desk of the Willow Grove Motel Lodge in Willow Grove, Pennsylvania, pose as appellant's wife and pay for one day's lodging. Shortly thereafter, the foursome assembled in the motel room.

John and Barbara departed in order to purchase narcotics, while appellant and the victim remained behind in the motel. Appellant's request for sex with the victim was rejected; however, he persisted with force. He called Mrs. Vaughan his "bitch" and more crudely instructed her to submit to his sexual whims. The victim was frightened and succumbed to his demand to remove her clothing.

Upon entirely removing her clothing, appellant grabbed her shoulder-length hair and pulled her to the bed. She then became the unwilling object of vaginal, anal and oral intercourse.

When John and Barbara returned with a "tannish powder" in a "cellophane bag", they directed the victim to sit on the commode. Despite her resistance, the victim was unable to free herself from John's grasp and from the injection of heroin with a hypodermic needle into her forearm. During this narcotic injection, appellant continued to verbally abuse Mrs. Vaughan. This injection of drugs was forcibly inflicted upon her two or three times that day. Her resistance became weaker as the number of dosages increased.

Later that day, John Graveley left the motel after engaging in fisticuffs with appellant. The other three left shortly thereafter for fear that their riotous behavior would cause the summoning of police officers. They drove, without John, to the residence of appellant's mother; however, they promptly returned to the motel where they were instructed to leave due to the chaotic condition of the room. When two police officers arrived, the threesome departed without further incident. Appellant threatened to "kill" the victim if she informed the officers of her plight.

They returned to appellant's mother's residence; Barbara slept inside the home while appellant held the victim as an overnight captive in the automobile. The following morning, a man residing with appellant's mother drove the automobile to work, with appellant and victim as passengers. Mrs. Vaughan was again warned not to disclose her abduction to the driver. When the man left the vehicle at his place of employment, appellant drove the victim back to his mother's house to get Barbara and then onto the Salvation Army to get John Graveley.

When their attempt to acquire a welfare check under an alias failed, the foursome drove to J.M. Fields, a Philadelphia department store. A scheme was designed whereby Barbara would shoplift goods from the store and the victim, under compulsion, would return them and seek a refund. This scheme produced money on five or six occasions. More narcotics were then purchased and the victim again forcibly injected.

On the final evening, Mrs. Vaughan was forced to acquire a single room at the American Motel in Trevose, Bucks County, Pennsylvania, and permit her three abductors to enter surreptitiously. Once the foursome was inside the room, appellant repeated his acts of nonconsensual vaginal, anal, and oral intercourse with the victim. He pulled her hair, struck her face, and threatened to promote her for prostitution if she did not perform to his sexual satisfaction.

The following morning, on November 2, 1977, Mrs. Vaughan left the motel room under the pretense of purchasing soda and food. Instead, she went to the motel manager and reported her captors. Police officers were promptly summoned and appellant and his two co-defendants were taken into police custody. As a result of their four-day spree, appellant and his co-defendants were charged with various counts of possession of a controlled substance, possession of a controlled substance with intent to deliver, delivery of a controlled substance, rape, involuntary deviate sexual intercourse, indecent assault, simple assault, aggravated assault, kidnapping, felonious restraint, theft by unlawful taking or

disposition, receiving stolen property and criminal conspiracy.

Appellant argues that the nineteen month delay between the conclusion of trial and the hearing on post-trial motions unduly prejudiced him. Appellant would have us apply Rule 1100(e)(i) of the Pa.R.Crim.P., whereby new trial must be commenced within 120 days following an Order for new trial, to the instant matter. Moreover, the speedy trial interests of circumventing oppressive imprisonment, minimizing the accused's anxiety and preserving fresh evidence are, according to appellant, applicable here also.

■ Neither our courts nor the United States Supreme Court has decided whether post trial proceedings are part of trial for Sixth Amendment purposes, *Commonwealth v. Pounds*, 490 Pa. 621, 417 A.2d 597 (1980); *Pollard v. U.S.*, 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957); however, these earlier decisions have assumed arguendo that post trial proceedings are part of the trial to the extent of an accused's speedy trial rights. Consequently, whether speedy trial rights have been infringed depends upon the circumstances. *Commonwealth v. Pounds*, supra; *Pollard v. U.S.*, supra. These circumstances include the length of delay, reason for the delay, assertion of the speedy trial right, and resulting prejudice of the delay. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

■ In the instant case, the jury returned its verdict on March 17, 1978. Despite the timely filing of post-trial motions, a hearing on said motions did not occur until October 9, 1979. This nineteen month delay does not, in itself, constitute a violation of constitutional safeguards because it did not surpass the maximum term of appellant's imprisonment. *Commonwealth v. Rutherford*, 252 Pa.Super. 348, 381 A.2d 952 (1977); *Commonwealth v. Giovengo*, 188 Pa.Super. 220, 146 A.2d 629 (1958).

The reason for the delay cannot be found in the record. Without some explanation of record, we are unable to

justify or denigrate a delay of nineteen months between conviction and argument on post trial motions.

Next, whether appellant asserted his right to a speedier post trial motions hearing sparks an inquiry whose answer does not favor him. The record reveals no petitions by appellant seeking a speedier disposition of his post trial motions. Nor do we find evidence of any other form of request, formal or informal, urging the court to commence argument on his motion.

Finally, we consider any prejudice resulting from the delay. Under Pa.R.Crim.P. 4010(A)(1), a trial judge is empowered to release a convicted defendant on bial where there is an unreasonable delay in disposition of post-trial motions. Appellant did not petition for his release on bail; consequently, it cannot be held that any prejudice was imposed by the delay in post-trial proceedings. *Commonwealth v. Pounds,* supra.

Our application of the "circumstances" test directs a finding that the delay was neither intentional nor prejudicial. Appellant's rights to a speedy post-trial disposition went unscathed.

■ Next, appellant avers that the trial judge erred by usurping the prosecutor's role and, in so doing, assuming the role of an advocate. Although a court's power to interrogate witnesses should be used sparingly and with extreme caution, it remains the right and, at times, the duty of the trial judge to examine witnesses. *Commonwealth v. Seabrook,* 475 Pa. 38, 379 A.2d 564 (1977); *Commonwealth v. Laws,* 474 Pa. 318, 378 A.2d 812 (1977); *Commonwealth v. Brown,* 438 Pa. 52, 265 A.2d 101 (1970). So long as the trial court examines witnesses for clarification of confusing facts in a brief manner not indicative of bias, no trial error exists. *Commonwealth v. Brown,* supra.

■ Appellant does not direct us to any specific incidents during either party's case in chief in which the trial judge questioned a witness without purpose and with undue zeal and bias. The record discloses incidents of the trial judge

instructing counsel to inquire what a particular witness observed instead of how that witness felt; instructing counsel to ask specific, pinpointed questions rather than summarize previous testimony; clarifying testimony on overlooked matters before counsel examined on the next set of facts; asking a witness to speak louder; and instructing both attorneys on proper methods of examination. The trial judge's precise language in making the above inquiries, clarifications and instructions did not reflect any bias, nor were his interruptions unduly protracted.

■ Appellant's next contention is that trial and post-trial counsel were ineffective in failing to request that both opening and closing arguments be recorded. Appellant argues that absent a record of counsel's address to the jury, potential issues, such as prosecutorial misconduct, were unavailable for appeal.

In its charge to the jury, the trial court issued the following instruction:

"You have just finished listening to argument of counsel and of course, you have already heard me tell you that their arguments are not evidence and must not be taken by you as evidence, nor must any of their references to their recollection of the evidence in any way bind you as to the facts of the case. You are the sole triers of the facts of this case. It's your sole exclusive and collective recollections which will determine the outcome of this case." N.T., March 17, 1978, p. 540.

A similar cautionary instruction was given to the jury at the outset of trial. Appellant does not refer to any specific prosecutorial remarks; nevertheless, had a harmful one been made, any prejudice may have been alleviated by the two cautionary instructions. *Commonwealth v. Linder*, 284 Pa.Super. 327, 425 A.2d 1126 (1981).

It seems, however, that appellant does not dispute the remedial effect of the cautionary instructions. Instead, he would have us categorically rule that the mere failure alone to request stenographic notes of opening and closing statements, without evidence of any prejudicial remarks made

during such statements, constitutes ineffectiveness. Appellant cites *Commonwealth v. Shields*, 477 Pa. 105, 383 A.2d 844 (1978), in support of this proposition.

The issue of ineffectiveness of counsel here does not quite fall within the mold cast by *Shields*, supra. In *Shields*, supra, tapes of the prosecutor's closing argument were lost and never transcribed. It was held that the unavailability of the tape or transcript deprived defendant of a meaningful appeal; therefore, a new trial was the appropriate relief. The *Shields* court further opined that defendant's failure to allege specific prosecutorial remarks amounting to misconduct or prejudice was inconsequential; if defendant could allege with specificity the prejudicial portions of the prosecutor's closing statement, no record would be necessary.

Here, no record of opening and closing statements was made; therefore, none existed to be misplaced or lost. *Shields*, supra, and its progeny ruled only on those circumstances where some record was made at trial but later became unavailable for review. We cannot, then, construe *Shields*, supra, to dictate a finding of ineffectiveness due only to counsel choice not to have a record made. Unless appellant alleges prejudice resulting from the failure to assert some particular trial error occurring during opening and closing statements, we will not reverse. Mere conjecture will not advance appellant's position. See *Commonwealth v. Sanford*, 497 Pa. 442, 441 A.2d 1220 (1982); *Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332 (1981).

 Appellant's next argument is that the portion of the prosecutor's opening statement referring to appellant's involvement in shoplifting at J.M. Fields' Department Store, a crime for which he was not charged, unfairly prejudiced him. References during trial to the defendant's unrelated criminal acts may be grounds for a new trial; however, where they are mere passing references and the court issues a cautionary instruction to the jury, a mistrial will not be granted. *Commonwealth v. Corbin*, 268 Pa.Super.

526, 408 A.2d 1128 (1979); *Commonwealth v. Irwin,* 475 Pa. 616, 381 A.2d 444 (1977). Testimony on the shoplifting spree and the obtaining of a refund upon return of the stolen articles was not elicited for the purpose of proving appellant guilty of an act for which he was not charged. It was a mere passing reference for the ostensible purpose of proving that appellant and co-defendants had the financial means to purchase narcotics, possession of which they were charged. We agree that the second prong test of the *Corbin* and *Irwin* test was not met in that no jury instruction was given to disregard the shoplifting incident; however, where such evidence is introduced for a more complete understanding of the natural course of events, no prejudice ensues and no curative instruction is necessary. See *Commonwealth v. Funke,* 306 Pa.Super. 542, 452 A.2d 857 (1982).

The final issue we must address is whether both trial and post-trial counsel were ineffective in not requesting a polling of the jury. Although the jury must be polled at the request of any party, Pa.R.Crim.P. 1120(f), and the polling is the defendant's right to make certain that each juror decided voluntarily, without coercion or the influence of fatigue, *Commonwealth v. Martin,* 379 Pa. 587, 109 A.2d 325 (1954), we do not find ineffectiveness here for either counsel's choice not to request a polling. Following the jury's return from deliberations, each charge was read aloud by the court's clerk and responded to by the foreman. There was no hint of any juror's dissatisfaction with the foreman's verdict announcements, nor does appellant allege any other incidents reflecting a particular juror's dissatisfaction with the verdicts. Without more, we must not find ineffectiveness of counsel for the choice not to poll the jury. See *Sanford,* supra; *Pettus,* supra.

Appellant also advances these remaining arguments: 1) counsel was ineffective in not petitioning for separate counsel for each co-defendant, in not requesting a severance and in not conducting a multi-representation colloquy; 2) trial court erred in denying testimony from two

witnesses capable of impeaching the prosecutrix; and 3) trial court erred in sending verdict slips to the jury for deliberations. Upon further research of the law and a finding of sound rationale and application of the law by the lower court, we reject these arguments and adopt the lower court opinion to that extent.

Judgment of sentence affirmed.

POPOVICH, J., concurs in the result.