458 A.2d 248

**COMMONWEALTH of Pennsylvania**

v.

**C. Paul DAVIS, Appellant.**

Superior Court of Pennsylvania.

Submitted March 15, 1982.

Filed March 31, 1983.

3. 77 P.S. § 481.

86

Joseph Ronald Kushner, Oil City, for appellant.

William G. Martin, Assistant District Attorney, Franklin, for Commonwealth, appellee.

Before SPAETH, JOHNSON and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellant contends that the evidence is insufficient to sustain his conviction for conspiracy to commit theft by deception. Because the evidence fails to establish appellant's knowledge of any criminal purpose, we reverse the judgment of sentence and order appellant discharged.

In reviewing the sufficiency of the evidence, we must determine, upon viewing the evidence in the light most favorable to the Commonwealth as verdict winner, whether a factfinder could reasonably have found all elements of a crime beyond a reasonable doubt. *Commonwealth v. Dolfi*, 483 Pa. 266, 396 A.2d 635 (1979). So viewed the facts are as follows:

On July 30, 1979, appellant agreed to accompany Steve Eakin to Pittsburgh to pick up inspection stickers. Appellant phoned Nelson Cunningham, a mechanic at Weithrup Erection Co., and he and Eakin stopped there around noon. Cunningham was working under the hood of a 1974 Cadillac, and asked appellant and Eakin if they knew anyone interested in buying it. Cunningham had previously agreed with the car's owner to dispose of it as if it were stolen so

that the owner could file a false insurance claim and Cunningham could get spare parts. Eakin and appellant then left for Pittsburgh. That night, appellant phoned Cunningham and talked for four minutes.

The following morning, July 31, Eakin asked appellant to help him drive the Cadillac to a potential buyer. Around noon, at Weithrup, Cunningham gave Eakin the keys to the Cadillac, and Eakin drove it away while appellant followed in Eakin's car. Several employees saw them arrive soon after at Heller's auto-body shop in Seneca. Eakin and Heller, soon joined by appellant, stood behind the Cadillac. Eakin delivered the book of inspection stickers to Heller. Eakin told Heller that he could make a deal on the Cadillac but that Heller would have to dismantle it and make sure it was not put back on the road. Eakin also requested fifteen of the inspection stickers in payment. The three arranged to meet later that afternoon at Heller's garage in Rockland. At two p.m., when only Heller was present at the Rockland garage, Eakin drove up in the Cadillac with appellant following in Eakin's car. While Eakin, Heller, and appellant talked outside for a few minutes, appellant said that if the Cadillac were dismantled he could find a buyer for the tires and wheels. Eakin then drove the Cadillac into the garage. Appellant told Heller that, as part payment for the car, he wanted a trailer axle from a pile that was lying nearby. Eakin, as he got out of the car, wiped off the steering wheel, door handle, and keys. Appellant soon left alone. Eakin and Heller returned to Heller's Seneca shop, and Eakin said he wanted $300 and fifteen inspection stickers as the price for the Cadillac. Heller said he could not pay until after Friday, August 4. After Heller had gone, appellant returned in Eakin's car to pick up Eakin from the Seneca shop.

Over the next few days, appellant accompanied Eakin and Eakin's father on an unrelated trip. Cunningham, on August 4, told the car's owner, that the Cadillac was "long gone." On Saturday, August 5, the day after their trip, appellant phoned Eakin to suggest they follow up on the

Cadillac. Appellant and Eakin went to Heller's Rockland garage, where they had left the car, but saw neither Heller nor the Cadillac. Appellant tried unsuccessfully to reach Cunningham by phone that night. On Monday, Eakin and appellant visited Heller, and Eakin asked payment for the Cadillac. Eakin refused Heller's $100 offer. That night appellant phoned Cunningham's home, but spoke only to Mrs. Cunningham. Appellant took no further actions concerning the Cadillac after Eakin told him the deal with Heller had been completed. However, Eakin did again demand that Heller pay, and on August 16, the Cadillac's owner filed a report with the police that the car was missing and probably stolen. At trial, appellant, Heller, and Eakin testified. The jury found appellant guilty of conspiracy to commit theft by deception. The lower court sentenced appellant to six-to-twelve months imprisonment with work release. This appeal followed.[1]

■■■ Criminal conspiracy requires that the defendant with "intent" to promote or facilitate a crime "agrees" to aid another in the planning, attempt, or commission of the crime. 18 Pa.C.S.A. § 903; *Commonwealth v. Carter*, 272 Pa.Superior Ct. 411, 416 A.2d 523 (1979). Although the defendant need not be aware of all criminal purposes of the conspiracy, he must be aware of, and agree to aid, at least some purpose. *Commonwealth v. Roux*, 465 Pa. 482, 350 A.2d 867 (1967). Because direct evidence of intent and agreement is often unattainable, conspiracy may be proven entirely from the "overt acts," "relationship, conduct, or circumstances" of the parties. *Commonwealth v. Yobbagy*, 410 Pa. 172, 177, 188 A.2d 750, 752 (1963). The facts and circumstances must be considered together with all reasonable inferences arising from them. *Commonwealth v. Carter, supra; Commonwealth v. Anderson*, 265 Pa.Superior Ct. 494, 402 A.2d 546 (1979). However, "[w]hen two equally reasonable and mutually inconsistent inferences can

1. Eakin's conviction was upheld by this court in *Commonwealth v. Eakin*, 306 Pa.Superior Ct. 609, 452 A.2d 55 (1982). The record shows that Eakin took a more active role and conducted additional negotiations with Heller outside of appellant's presence.

■■■■

be drawn from the same set of circumstances, the jury may not be permitted to guess which inference it will adopt." *Commonwealth v. Hubbard,* 472 Pa. 259, 270, 372 A.2d 687, 692 (1977). *See Commonwealth v. Woong Knee New,* 354 Pa. 188, 47 A.2d 450 (1946). "When a party on whom the burden of proof rests in either a criminal or a civil case, offers evidence consistent with two opposing propositions, he proves neither." *Commonwealth v. Anderson, supra* 265 Pa.Super. at 500, 402 A.2d at 548. *See Commonwealth v. Donald,* 192 Pa.Superior Ct. 276, 161 A.2d 915 (1960). Thus, a defendant's standing near a car outside a house while a murder was taking place inside did not support a conspiracy conviction, for, even though the facts fit the prosecution's theory that he was a lookout and a getaway driver, no evidence showed the defendant knew of the planned crimes. *Commonwealth v. Finley,* 477 Pa. 382, 383 A.2d 1259 (1978). Similarly, standing with others facing a recently jimmied door then fleeing from an approaching police officer was insufficient to prove conspiracy for burglary and trespass. *Commonwealth v. Beauford,* 286 Pa.Superior Ct. 297, 428 A.2d 1000 (1981). *See Commonwealth v. Johnson,* 272 Pa.Superior Ct. 375, 415 A.2d 1246 (1979). Concerted action over several days is not necessarily inconsistent with innocence. Where a defendant met with convicted co-conspirators at the same time every day in a parking lot, and was once seen passing white slips of paper and at another time passed a child whose overalls were later found to contain numbers paraphernalia, the evidence was insufficient to prove his participation in a numbers conspiracy beyond a reasonable doubt. *Commonwealth v. Dolfi, supra.* Upon reviewing this record, we find the evidence and reasonable inferences are equally consistent with innocence. Although the facts fit the Commonwealth's theory, nothing shows appellant knew of the planned crime or any crime, and thus the evidence is insufficient to sustain the conviction.

█ The circumstances show that Cunningham considered appellant's and Eakin's transferring of the Cadillac from

Weithrup's to Heller's to be the first step in the planned disposing of the car as if stolen.[2] However, little effort was made to conceal this midday transfer, made in view of employees of both Weithrup's and Heller's. The circumstances indicate that the planned disappearance was to occur from Heller's. That Eakin mentioned within appellant's hearing his request for inspection stickers and that the car be dismantled and taken off the road might raise an inference that either Eakin or Cunningham had confided the crime to appellant. However, because the car was working poorly, it is equally plausible that Eakin saw no harm in making the request in front of appellant and that appellant would find nothing untoward in it. Similarly, appellant's telling Heller at the second meeting that if the car were dismantled he had a buyer for the tires and wheels is consistent with an innocent attempt to help and reveals only mundane knowledge of where to sell the most marketable spare parts. Appellant's subsequently requesting trailer axles, while incriminating if interpreted as a demand for a share of ill-gotten profits or as seeking payment for silence, may just as well have been a request to arrange some bartered compensation for helping carry out a legitimate sale. Nothing indicates that the axles, which were lying near where appellant and Heller were standing, were disproportionately valuable. Finally, appellant's activities in following-up the transfer by visiting the garage on Saturday and accompanying Eakin on the brief visit to collect payment on Monday, do not demonstrate appellant was informed of the criminal purpose or had reason to know of it. Viewing the record as a whole, no evidence dispels the conclusion that appellant was simply asked along for the ride to lend an appearance of legitimacy to what the conspirators knew was a corrupt transaction. A criminal conviction may not rest upon mere conjecture about what

2. Despite the Commonwealth's alternative contention that appellant might have believed the Cadillac to be stolen, the record reveals that the car was sitting in plain view of employees at Weithrup's, and was well known to belong to the company's president's son-in-law, and that appellant was apprised of these facts.

persons said to each other, but only upon evidence sufficient to overcome the presumption of innocence and to prove guilt beyond a reasonable doubt. Accordingly, we reverse the judgment of sentence and order appellant discharged.[3]

Reversed and appellant discharged.

JOHNSON, J., dissents.

**3.** Because of our disposition of this case we need not address appellant's remaining contentions.