478 A.2d 1286

**COMMONWEALTH of Pennsylvania**

v.

**Ollie CARTER, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 13, 1983.

Filed June 1, 1984.

Petition for Allowance of Appeal Denied Sept. 24, 1984.

492

Joseph T. Kelley, Jr., Philadelphia, for appellant.

Jane Cutler Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, President Judge, and CIRILLO and JOHNSON, JJ.

CIRILLO, Judge:

This is an appeal from a judgment of sentence entered in the Court of Common Pleas, Philadelphia County. On October 23, 1976 at approximately 7:45 p.m. appellant, Ollie Carter, was arrested for the robbery of a Pantry Pride employee who had just collected the day's mail and receipts from the Pantry Pride store at Front Street and Godfrey Avenue in Philadelphia.

Because of his unavailability for various reasons, appellant was not brought to trial until June 1, 1981. On June 8, 1981, following a jury trial, appellant was convicted of robbery, criminal conspiracy and several counts of simple assault. After post-verdict motions were denied, appellant was sentenced to consecutive sentences of ten to twenty years imprisonment for the robbery, two to four years for the conspiracy, and one to two years on each of the simple assault convictions. This appeal followed.

Initially, appellant contends that the evidence presented at trial was insufficient to sustain his convictions on any of the above charges. The test of the sufficiency of the evidence in a criminal case is whether, viewing all the

evidence admitted at trial in the light most favorable to the Commonwealth and drawing all reasonable inferences in the Commonwealth's favor, there is sufficient evidence to enable the trier of fact to find every element of the crimes charged beyond a reasonable doubt. *Commonwealth v. Nelson*, 320 Pa.Super. 488, 467 A.2d 638 (1983); *Commonwealth v. Russell*, 313 Pa.Super. 534, 460 A.2d 316 (1983). Viewed in this light the record reveals the following facts.

At approximately 7:30 p.m. on October 23, 1976, Leon Markowitz, an employee of Pantry Pride, was robbed at gunpoint in the store's parking lot by two black males. Two sacks which contained mail and store receipts were stolen. The perpetrators fled the scene in a Volkswagen. Within moments of the robbery Philadelphia Police Officer John Randles arrived at the scene. He immediately obtained an account of the crime and descriptions of the suspects, their get-away car, and their direction of flight. These details were quickly broadcast over police radio. Shortly thereafter, Philadelphia Police Sergeant Charles Tapper spotted a Volkswagen in the vicinity which matched the reported description and which had two black male occupants. The police attempted to intercept the vehicle, but the Volkswagen sped off. A high-speed chase ensued, in which Sergeant Tapper and his partner were joined by Officer Koiko in a second police car.

Appellant, the driver of the Volkswagen, attempted to elude the police. During the chase the passenger of appellant's vehicle opened fire on the pursuing police cars. At one point the Volkswagen stopped and the gunman alighted to get a better shot. He fired several times, jumped back in the car, and sped off. The pursuit continued for fifteen blocks when appellant's get-away efforts were thwarted by a sudden collision with a police car stationed as a road block. After a brief scuffle, appellant and his accomplice were subdued. The two Pantry Pride mail bags, which the robbery victim later identified as those stolen, were recovered from the wrecked car. Also, two guns were retrieved from the car.

Appellant was placed under arrest and taken to the Albert Einstein Medical Center, Northern Division, for treatment of minor injuries suffered at the time of his arrest. While at the hospital, appellant confessed to the police that he and his accomplice, Robert Forrest, had planned the robbery hoping for a "big score". He admitted that he and his partner did in fact rob Leon Markowitz and that he then attempted to elude the police while Forrest fired at them.

Based upon our review of the facts as adduced through trial testimony, we are convinced that the evidence was sufficient to support all of appellant's convictions.

With regard to the conviction for the robbery of the Pantry Pride employee, it is true that no clear eyewitness identification was presented at trial which implicated appellant. Nonetheless, circumstantial evidence alone may be sufficient to support a conviction, provided the inferences relied upon are more than mere conjecture or surmise. *Commonwealth v. Sinwell*, 311 Pa.Super. 419, 457 A.2d 957 (1983); *Commonwealth v. McCrea*, 308 Pa.Super. 284, 454 A.2d 132 (1982). Here, the circumstantial evidence is compelling and points to one virtually inescapable inference— the appellant robbed Leon Markowitz in the parking lot of the Pantry Pride.

Appellant also maintains that the evidence presented at trial was insufficient to support his convictions for simple assault. The offense of simple assault is defined as follows:

**18 Pa.C.S. § 2701 Simple Assault**

(a) Offense defined—A person is guilty of assault if he:

(1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another.

. . . . .

(3) attempts by physical menace to put another in fear of imminent serious bodily injury.

Attempt exists within the contemplation of this statute when a person, with intent to commit a crime, does any act

which constitutes a substantial step toward the commission of that crime. 18 Pa.C.S. § 901(a); *Commonwealth v. Chance,* 312 Pa.Super. 435, 458 A.2d 1371 (1983); *Commonwealth v. Griffin,* 310 Pa.Super. 39, 456 A.2d 171 (1983).

■ Here, the subject assault charges arose following the robbery when, during the ensuing chase, shots were fired at the police from appellant's car. It is clear from the record that Robert Forrest, the passenger in appellant's car, was the one who fired the shots. Appellant concedes that Forrest committed an assault. However, appellant argues that because he was the driver and not the shooter, he may not be convicted of the assaults upon the pursuing police officers. We do not agree.

■ A showing of mere presence at the scene of a crime is insufficient to support a conviction; evidence indicating participation in the crime is required. *Commonwealth v. Keblitis,* 500 Pa. 321, 456 A.2d 149 (1983); *Commonwealth v. Thomas,* 450 Pa. 125, 299 A.2d 226 (1973). Our review then focuses on whether there was sufficient evidence of appellant's *participation* in the assault. Was there sufficient evidence to prove that appellant with criminal intent, did something which constituted a "substantial step" toward the commission of an assault?

Although appellant was the driver and not the gunman, the evidence indicates that he was more than a passive spectator; that he in fact was a very active participant in the shooting spree. Appellant's "mere presence" in the car, as mischaracterized by appellant, was not in the role of captive passenger. Appellant was the driver. While his accomplice repeatedly shot at the police, appellant piloted the get-away car. At one point, as Sergeant Tapper testified, appellant stopped the car and waited while the gunman got out and fired several shots.

From this evidence, the jury could fairly and reasonably infer that appellant's conduct as driver promoted, facilitated and otherwise encouraged the shooting upon the police officers. The jury, not improperly, found that appellant's

conduct demonstrated the requisite criminal intent and constituted a substantial step toward the shooting at the police officers.

Appellant's third challenge to the sufficiency of the evidence concerns his conviction for criminal conspiracy. Specifically, appellant alleges that insufficient evidence was presented at trial to prove that an "agreement" existed between him and Robert Forrest to commit the robbery. We disagree.

Of course, the existence of a conspiracy depends upon proof of an agreement or common design, to commit an unlawful act. *Commonwealth v. Olds*, 322 Pa.Super. 442, 469 A.2d 1072 (1983); *Commonwealth v. Lamb*, 309 Pa.Super. 415, 455 A.2d 678 (1983); 18 Pa.C.S. § 903. However, direct proof of an agreement is not required. The conduct of the parties and the circumstances surrounding such conduct may be sufficient to establish an inference of agreement. *Commonwealth v. Kennedy*, 499 Pa. 389, 453 A.2d 927 (1982); *Commonwealth v. Davis*, 312 Pa.Super. 85, 458 A.2d 248 (1983). However, more than mere presence at the scene is necessary to establish a conspiracy. *Commonwealth v. Olds, supra; Commonwealth v. Lamb, supra.*

Here again, appellant's involvement in the robbery went beyond "mere presence" at the scene. After a review of trial testimony, we conclude that the circumstances surrounding the robbery were sufficient to support the jury's inference that appellant and Robert Forrest agreed to commit the robbery. Appellant's complicity and subsequent admission certainly foster the reasonable inference that the robbery had been pre-planned.

Appellant's next contention is that the trial court erred when it ruled appellant's confession voluntary and allowed its admission into evidence. Appellant contends that his statement made to police at the hospital shortly after his arrest was involuntary because he was in a confused psychological state at the time.

The suppression court heard testimony of the dramatic car chase and the injuries suffered by appellant as a result of the collision and ensuing scuffle. However, the court also heard testimony from police officers that appellant was alert and coherent at the time he offered his confession. The court concluded that although appellant had been involved in an out-of-the-ordinary experience and had sustained minor injuries, his mental faculties and ability to answer questions were unimpaired, and his confession thus voluntary and intelligent.

> Our duty on review is to determine whether the record supports the factual and legal findings of the court below and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, we are to consider only the evidence of the Commonwealth's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted.

*Commonwealth v. Brown*, 298 Pa.Super. 11, 21, 444 A.2d 149, 154 (1982), *quoting Commonwealth v. Hunt*, 263 Pa. Super. 504, 509, 398 A.2d 690, 692 (1979).

After an independent review of the suppression hearing testimony, we conclude that the factual and legal findings of the suppression court are adequately supported by the evidence.

Next, appellant raises a claim of ineffective assistance of counsel with respect to the admission of his confession into evidence. Specifically, appellant maintains that trial counsel should have pursued the suppression of the confession on the basis of an alleged unnecessary delay between arrest and arraignment. Pa.R.Crim.P. 130. We reject this argument.

■ Counsel cannot be found ineffective for failing to pursue a meritless argument. *Commonwealth v. Williams*, 500 Pa. 226, 455 A.2d 632 (1983); *Commonwealth v. McKnight*, 311 Pa.Super. 370, 457 A.2d 931 (1983). A motion to suppress appellant's confession on the basis of Rule 130 would have been without merit.

■ Under the law applicable at the time of appellant's arrest, a pre-arraignment delay would only be grounds for suppression of evidence when the evidence obtained was reasonably related to or the product of the delay.[1] *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972); *Commonwealth v. Jones*, 271 Pa.Super. 528, 414 A.2d 379 (1982). As a matter of law, "if the unnecessary delay *follows* the securing of an [incriminating statement] that evidence is not reasonably related to the subsequent delay." *Commonwealth v. Williams*, 484 Pa. 590, 592, 400 A.2d 1258, 1259 (1979).

■ Appellant's volunteered admission was not reasonably related to nor the product of the alleged pre-arraignment delay. The unnecessary pre-arraignment delay, if any, did not occur until after appellant's statement had been secured. Appellant was arrested at approximately 7:45 p.m., whereupon he was taken to the hospital for treatment. The challenged statement was made at the hospital within approximately one hour of the arrest. This short time span does not constitute an unnecessary delay; and whatever delay did occur did not cause appellant to confess.

The next claim raised by appellant is that his conviction on one of the counts of simple assault was not by unanimous jury verdict.[2] This argument is without merit.

■ A conviction must be based on a unanimous jury verdict. *Commonwealth v. Ciotti*, 496 Pa. 232, 436 A.2d 983 (1981); *Commonwealth v. Pemberton*, 256 Pa.Super. 297, 389 A.2d 1132 (1978); Pa.R.Crim.P. 1120. Moreover, in order to ensure the unanimity of the verdict, a defendant may poll the jury in order to ascertain whether each juror has voluntarily entered into the verdict. *Commonwealth v. Johnson*, 312 Pa.Super. 484, 459 A.2d 5 (1983); Pa.R. Crim.P. 1120(f). In assessing an individual juror's response

**1.** The six hour rule enunciated in *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977), effective May 15, 1977, is not applicable to this case.

**2.** The three assault charges related to three different police officers and were based on similar evidence.

to questioning during a jury poll, we look to the totality of the circumstances to determine whether his answers indicate voluntary assent to the verdict. *Commonwealth v. Ciotti, supra.*

■ Appellant claims that unanimity of the verdict was lacking because one of the jurors, upon being polled initially, registered a vote of not guilty on one of the assault counts. Although appellant concedes that this juror later changed his vote, he maintains that the change resulted from some form of coercion.

Viewing the record and considering the totality of the circumstances surrounding the jury poll, we are convinced that the juror in question voluntarily and unequivocally assented to the guilty verdicts, and that all verdicts were therefore unanimous. We note that:

... a juror's initial ambiguous, inconsistent, or evasive answer to a poll does not vitiate unanimity so long as a subsequent answer or further interrogation indicates clear and unequivocal assent to the majority vote, and there is no evidence of involuntariness or coercion.

*Commonwealth v. Hall*, 267 Pa.Super. 204, 214, 406 A.2d 765, 770 (1979).

We agree with the trial court that the juror's initial answer was inadvertent, and that it was subsequently and unequivocally corrected. We reject appellant's contention that coercion in any way influenced the verdict.

Appellant's next contention is that the hearing court erred in granting the Commonwealth's petition to extend the trial run date. Appellant claims that the Commonwealth violated Pa.Rule of Crim.P. 1100 by failing to exercise due diligence in bringing him to trial, and as a result appellant was denied his right to a speedy trial.

We note that appellant failed to appear for trial on February 14, 1977, the originally scheduled date; and that appellant in fact remained a fugitive until he was captured by federal authorities on an unrelated charge on July 5, 1980. Appellant does not dispute his "unavailability" for

trial during this period. The focus of our inquiry centers on the period from July 5, 1980, when appellant was arrested and taken into federal custody, until February 5, 1981, when he was returned to Pennsylvania custody for trial for the Pantry Pride robbery. We evaluate the Commonwealth's due diligence during this period. Due diligence under Rule 1100 demands only a "reasonable effort" by the Commonwealth to bring appellant to trial. *Commonwealth v. Martofel*, 248 Pa.Super. 206, 375 A.2d 60 (1977); *Commonwealth v. Thompkins*, 311 Pa.Super. 357, 457 A.2d 925 (1983); *Commonwealth v. Wroten*, 305 Pa.Super. 340, 451 A.2d 678 (1982).

After reviewing the complex chronology of this case we conclude that the Commonwealth's efforts were reasonable and diligent. Appellant was arrested by federal authorities in Pennsylvania on July 5, 1980 for a bank robbery committed in Virginia. On July 7, 1980, within two days of that arrest, the Commonwealth made an informal request for transfer of appellant from federal to state custody. The Commonwealth was advised, however, that appellant would not be turned over for prosecution for the Pantry Pride robbery until the trial on the federal bank robbery charges was concluded. Trial in Virginia was scheduled for September 19, 1980. Upon being apprised of the decision of the United States Attorney to retain custody, the Commonwealth, on July 7, 1980, lodged a detainer on appellant.

At the conclusion of the federal trial on October 7, 1980, appellant was found guilty of bank robbery and sentenced to imprisonment for twenty years in the United States Penitentiary in Marion, Illinois. On November 7, 1980, the Commonwealth contacted the Marion penitentiary and requested immediate custody of appellant. On November 10, 1980 the Commonwealth sent a formal request for temporary custody of appellant, pursuant to the Interstate Agreement on Detainers Act[3] (hereinafter "Detainer Agreement"). On December 15, 1980 the Marion officials informed the Commonwealth that appellant refused to con-

3. Codified in Pennsylvania at 42 Pa.C.S. § 9101 *et seq.*

504

sent to his return to Pennsylvania for trial. Under the provisions of the Detainer Agreement, because appellant did not voluntarily agree to his return, the Commonwealth was forced to wait thirty days before securing his transfer. On February 5, 1981 the federal authorities transferred appellant to Pennsylvania.

Since the originally scheduled trial date had long passed, the Commonwealth filed a petition to extend under Rule 1100. The court below granted an extension of the run date to July 5, 1981. Appellant challenges this extension.

Of course under Rule 1100, all periods of delay beyond the mandatory period must be either excluded from the computation under Rule 1100(d) or justified by an order granting an extension under Rule 1100(c) if the Commonwealth is to prevail. *Commonwealth v. Shelton*, 469 Pa. 8, 364 A.2d 694 (1976); *Commonwealth v. Colon*, 317 Pa.Super. 412, 464 A.2d 388 (1983). In order for the Commonwealth to receive an extension of time in which to commence trial, the Commonwealth must show that it cannot bring a defendant to trial within the prescribed period despite its due diligence. *Commonwealth v. Colon, supra.* Notable in this regard is the rule that mere incarceration in another jurisdiction does not make the defendant "unavailable" for trial under Rule 1100(d). *Commonwealth v. Ryan*, 306 Pa.Super. 159, 452 A.2d 264 (1982); *Commonwealth v. Emmett*, 274 Pa.Super. 23, 417 A.2d 1232 (1979). The Commonwealth must still demonstrate that it exercised due diligence in its efforts to secure the defendant's presence. *Commonwealth v. Ryan, supra.*

We conclude that the Commonwealth's efforts between July 5, 1980 and February 5, 1981 were duly diligent. While appellant was in federal custody awaiting trial for the Virginia bank robbery, there was little the Commonwealth could do but lodge a detainer to protect its interests. This the Commonwealth did almost immediately upon learning of appellant's arrest. Once the Commonwealth became aware that appellant's federal trial had been concluded, it timely

and vigilantly pursued appellant's transfer through channels prescribed by the Detainer Agreement.

As a result of the Commonwealth's efforts, appellant's transfer was promptly effected. Although appellant's return could conceivably have been swifter, the Commonwealth is not required to show that it acted "with perfect vigilance and punctilious care". *Commonwealth v. Johnson*, 305 Pa.Super. 310, 314, 451 A.2d 546, 548 (1982); *See also Commonwealth v. Thompkins, supra; Commonwealth v. Maguire*, 307 Pa.Super. 80, 452 A.2d 1047 (1982). We view the Commonwealth's efforts under the circumstances to be reasonable and diligent. *Cf. Commonwealth v. McCafferty*, 242 Pa.Super. 218, 363 A.2d 1239 (1976) (Commonwealth failed to invoke the procedures of the Detainer Agreement); *Commonwealth v. Kovacs*, 250 Pa.Super. 66, 378 A.2d 455 (1977) (Commonwealth waited six months to secure defendant's return to Pennsylvania).

■ Finally, appellant maintains that he was denied due process of law when he was transferred from federal custody to state custody without a pre-transfer hearing. We disagree. Appellant's transfer from the federal penitentiary in Marion, Illinois to custody in Pennsylvania was proper even though no pretransfer hearing was provided.[4]

The challenged transfer was effectuated through the mechanisms of the Detainer Agreement. Under the prescriptions of this compact a signatory state with outstanding criminal charges against a prisoner of another signatory state, may initiate a request for temporary custody of the prisoner in order to bring him to trial. No hearing is necessary as a pre-condition to transfer. However, the Detainer Agreement provides that the prisoner must be informed of the source and contents of any detainer lodged against him, and of his right to make a request for final

---

4. Since we find that appellant's transfer was proper, we reject appellant's argument that trial counsel was ineffective for failing to pursue this issue. Counsel cannot be found ineffective for failing to pursue meritless claims. *Commonwealth v. Williams*, 500 Pa. 226, 455 A.2d 632 (1983).

disposition of the charges. Moreover, the Detainer Agreement provides for a thirty-day waiting period before the demanding state may obtain custody. During this period the prisoner may take whatever actions he deems necessary to protect his rights.

In response to appellant's argument that his transfer from federal to state custody without a hearing deprived him of his liberty without due process, we rely on *Commonwealth ex rel. Coleman v. Cuyler*, 261 Pa.Super. 274, 396 A.2d 394 (1978). In *Coleman* an en banc panel of this Court explicitly held that the Due Process Clause does not require that a prisoner be afforded an extradition hearing prior to transfer under the Detainer Agreement.[5] *Accord Wertheimer v. State*, 294 Minn. 293, 201 N.W.2d 383 (1972); *State v. Thompson*, 133 N.J.Super. 180, 336 A.2d 11 (1975); *Hystad v. Rhay*, 12 Wash.App. 872, 533 P.2d 409 (1975). *See also* 98 A.L.R.3d 160 (1980). We view this holding as dispositive. "Because of the summary nature of interstate rendition proceedings, an accused is not entitled to the full panoply of procedural protections which are accorded a defendant in a criminal trial." 261 Pa.Super. at 280, 396 A.2d at 397. Even without allowance for a full scale judicial hearing, the Detainer Agreement adequately protects a prisoner's rights. The provisions of the Detainer Agreement provide ample opportunity for the prisoner to challenge a state's request for temporary custody by habeas corpus petition or other means.

In addition to his constitutional argument, appellant cites a recent decision of the United States Supreme Court as support for the proposition that a hearing is required before a prisoner may be transferred under the Detainer Agreement. In *Cuyler v. Adams*, 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981) the Supreme Court ruled that a prisoner was entitled to a hearing before a court of the sending state prior to being transferred.

---

5. The logic of *Coleman* is equally applicable when the sending jurisdiction is the United States rather than a member state.

The basis for the Court's holding in *Cuyler* was statutory not constitutional. Mr. Justice Brennan, speaking for the High Court, opined that the Detainer Agreement was not intended to narrow or remove pre-existing rights that a prisoner had under federal or state law to challenge the transfer to the receiving state. *Id.* In *Cuyler*, the prisoner was incarcerated in a jurisdiction which had adopted the Uniform Criminal Extradition Act (hereinafter "Extradition Act"). Under the provisions of the Extradition Act he was entitled to a hearing prior to being extradited. The Supreme Court held that the right to a pre-extradition hearing under the Extradition Act, was a pre-existing right which could not be abridged by the Detainer Agreement. Thus, the Court ruled that in these circumstances, the denial of a pre-transfer hearing was unlawful.

We do not question the soundness of the *Cuyler* decision. Rather, we conclude that its holding is not applicable to the case at bar. Whereas in *Cuyler*, the prisoner was incarcerated in a state which had adopted the Uniform Criminal Extradition Act, in this case appellant was in the custody of the United States which is not a party to the Extradition Act. *Thomas v. Levi*, 422 F.Supp. 1027 (E.D. Pa.1976). As a federal prisoner, appellant was not entitled to those pre-existing rights conferred by the Extradition Act. Pennsylvania may request temporary custody of a federal prisoner under the provisions of the Detainer Agreement, without regard to the Extradition Act. *Cuyler* is inapposite, and appellant has no statutory right to a pre-transfer hearing. *See Wilson v. Fenton*, 684 F.2d 249 (3rd Cir.Pa.1982); *Sorenson v. United States*, 539 F.Supp. 865 (S.D.N.Y.1982).

We find appellant's remaining claims to be wholly without merit. Accordingly, and for the foregoing reasons we affirm judgment of sentence.

SPAETH, President Judge, filed a concurring statement.

508

SPAETH, President Judge, concurring:

I join the majority's opinion except that on the transfer issue I think it sufficient to note that appellant would not be entitled to have his conviction set aside even if he was entitled to a hearing. *Cf. Commonwealth v. Sudler,* 496 Pa. 295, 436 A.2d 1376 (1981) (person convicted cannot avoid the verdict merely by pointing to an illegal arrest).