607 A.2d 294

COMMONWEALTH of Pennsylvania, Appellee,

v.

David P. BRUCE, Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 21, 1992.

Filed April 30, 1992.

M. Dan Mason, Asst. Public Defender, Meadville, for appellant.

Narcy L. Hughes, Asst. Dist. Atty., Meadville, for Com., appellee.

Before CAVANAUGH, POPOVICH and MONTGOMERY, JJ.

POPOVICH, Judge.

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Crawford County, following appellant's conviction on one count of theft by deception.[1] Appellant was sentenced to a term of imprisonment of thirty (30) months to sixty (60) months and ordered to make restitution in the amount of $47,340. The sole issue raised on appeal is whether the evidence was sufficient to sustain the verdict. Having reviewed the record, we conclude that the evidence was not sufficient to prove beyond a reasonable doubt that appellant committed the offense of theft by deception. Accordingly, we reverse and discharge appellant.

■ "The test of the sufficiency of the evidence in a criminal case is whether, viewing the evidence admitted at trial in the light most favorable to the Commonwealth and drawing all reasonable inferences in the Commonwealth's favor, there is sufficient evidence to enable the trier of fact to find every element of the [crime] charged beyond a reasonable doubt." *Commonwealth v. Carter*, 329 Pa.Super. 490, 495–96, 478 A.2d 1286, 1288 (1984); *Commonwealth v. Peduzzi*, 338 Pa.Super. 551, 553–57, 488 A.2d 29, 31–32 (1985).

■ Applying the aforementioned standard, we glean from the record the following facts: Appellant, David Bruce, a resident of Huntsville, Tennessee, worked as a broker/wholesaler of lumber, operating under the name D & R Lumber. Appellant would find and purchase lumber

1. 18 Pa.C.S.A. § 3922.

from various sawmills, locate buyers for the lumber and deliver the lumber to the buyers. The complaining witness, Steven Ongley, was the owner of Ongley Hardwoods, a sawmill located in Crawford County, Pennsylvania. In June of 1988, appellant approached Ongley about purchasing lumber. Appellant informed Ongley that he had purchase orders from reputable companies. One of those buyers was James Beard of Korn Industries who asked appellant to supply him with cherry lumber.

In general, appellant and Ongley agreed that appellant would pick up a load of lumber from Ongley and deliver it to the buyer. Appellant would charge the buyer for the lumber based on market prices plus a delivery fee. After appellant was paid by the buyer, he would pay Ongley. Appellant would receive a five percent wholesale discount from Ongley for each load of lumber he brokered and a seven percent discount for each load he actually paid for within ten days of his receipt of the load.

On June 27, 1988, appellant took possession of three loads of lumber from Ongley with an approximate total value of $10,242. Shortly thereafter, appellant paid Ongley $6,785, the value of two of the loads. From July 22, 1988 through August 10, 1988, Ongley provided appellant with five more loads of lumber with an approximate total value of $19,981. Appellant then requested additional lumber. However, Ongley would not provide appellant with any more lumber until he paid for the outstanding six shipments. Appellant then proposed an agreement whereby he would give Ongley his interest in a sawmill in exchange for three additional loads of cherry lumber valued at $21,490 and credit against his outstanding balance. At the time of this exchange, Ongley valued the sawmill at $50,000. On August 28, 1988, Ongley provided appellant with another load of lumber valued at $5,230. Therefore, by September 1, 1988, appellant and Ongley were essentially even in their business dealings.

After the sawmill exchange, Ongley testified that he would no longer provide appellant with lumber without

being paid for the lumber in advance. On September 2, 1988, appellant presented Ongley a check for $29,653.10, in payment for three loads of cherry lumber. From September 6, 1988, until October 10, 1988, Ongley provided appellant with thirteen additional loads of lumber with an approximate total value of $70,000, without advance payment from appellant. On October 4, 1988, appellant's check for $29,653.10 was returned due to insufficient funds. Ongley contacted appellant at his home in Tennessee concerning the rejected check and the outstanding balance due. By October 13, 1988, appellant had satisfied the check, but had not paid for any of the additional loads.

After the last lumber shipment on October 10, 1988, Ongley would not provide appellant with any more lumber. Ongley and appellant began to negotiate how to satisfy appellant's debt. Appellant's debt to Ongley was reduced by a payment of $6,973.68. Also, appellant gave Ongley a sawmill "edger" worth $3,500, and appellant permitted Ongley to sell the lumber owned by appellant which had been stored at Ongley's lumber yard. The final outstanding indebtedness was found by the court to be $47,340. Ongley testified that he spoke to appellant almost daily concerning payment. Eventually, appellant and Ongley employed attorneys in an attempt to resolve the matter. It appears negotiations continued up until the time when Ongley filed a private criminal complaint against appellant on June 28, 1989.[2]

Throughout the duration of their business relationship, appellant repeatedly told Ongley that he had not yet been paid for the lumber by the buyers, but as soon as he was paid he would pay Ongley. However, testimony revealed that appellant received timely payment from his various buyers, and, yet, appellant did not make timely payments to Ongley. In fact, approximately 90% of Ongley's lumber was shipped to Korn Industries who always paid appellant for the lumber within several days of its receipt.

2. See Pa.R.Crim.P. 133, regarding the filing of a criminal complaint by a private citizen.

At trial, appellant testified that he always intended to pay Ongley for the lumber. Appellant admitted that during the period in question, he was busy farming his land in Tennessee and was not sufficiently attentive to his lumber business. Appellant also admitted that he used the payments from Korn Industries to pay creditors, other that Ongley. He testified that often, due to market forces, he did not receive as much for the lumber as he had anticipated, and appellant noted that one of his clients had gone bankrupt and had not paid him for some of the lumber.

At trial, the Commonwealth argued that appellant was guilty of theft by deception because he deceived Ongley into delivering lumber to him by giving him a worthless check and promising to pay for lumber in a timely manner which appellant never intended to do. The Commonwealth also noted that appellant often promised to pay Ongley more money than appellant actually received for the lumber.

The crime of theft by deception is defined as follows: (a) Offense defined.—A person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally:

(1) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise;

(2) prevents another from acquiring information which would affect his judgment of a transaction; or

(3) fails to correct a false impression which the deceiver previously created or reinforced, or which the deceiver knows to be influencing another to whom he stands in a fiduciary or confidential relationship.

(b) Exception.—The term "deceive" does not, however, include falsity as to matters having no pecuniary significance, or puffing by statements unlikely to deceive ordinary persons in the group addressed.

■ Therefore, to be guilty of theft by deception, it was essential that appellant obtained the lumber by deception, intending not to pay Ongley for it. Cf., *Peduzzi*, 338 Pa.Superior Ct. at 557, 488 A.2d at 32; *Commonwealth v. Gallo*, 473 Pa. 186, 373 A.2d 1109 (1977); *Commonwealth v. Layaou*, 266 Pa.Super. 411, 405 A.2d 500 (1979); *Commonwealth v. Bentley*, 302 Pa.Super. 264, 448 A.2d 628 (1982); *Commonwealth v. Atwood*, 411 Pa.Super. 137, 601 A.2d 277 (1991). Appellant's intention not to pay for the lumber at the time he received it cannot be inferred from the fact alone that he did not pay for all the lumber. 18 Pa.C.S.A. § 3922(a)(1).

Upon review, we find that the evidence was insufficient to sustain his conviction. A thorough review of appellant's and Ongley's entire business relationship reveals that appellant did pay Ongley for all of the wood he received prior to September 6, 1988, and appellant paid for some of the loads supplied after that date. The record also reveals that the parties entered into extensive negotiations to settle the balance due on the lumber shipments delivered after September 6, 1988, and only after the negotiations failed to bear fruit did Ongley file a private criminal complaint. At no time during their relationship did appellant conceal his whereabouts or true identity from Ongley.

The record amply demonstrates that appellant is not an adept businessman and did lie to Ongley about his receipt of payments from Korn Industries. However, there is no evidence that, at the time of the transaction, appellant did not intend to pay for the lumber. To paraphrase the comment of the Honorable Judge Donald Wieand in a similar situation, if appellant was a liar, it does not necessarily follow that he was also a thief. *Peduzzi*, 338 Pa.Superior Ct. at 558, 488 A.2d at 33. Clearly, this case represents nothing more than a failed business relationship and is properly the subject of a civil suit, not criminal action. Accordingly, we reverse appellant's conviction for theft by deception.

Judgment of sentence is reversed, and appellant is discharged.