J.S45031/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
:
:
TERRELL LEWIS, :
:
Appellant : No. 1944 EDA 2013

Appeal from the Judgment of Sentence June 4, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division No(s).: CP-51-CR-0010857-2012

BEFORE: BOWES, WECHT, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.: **FILED OCTOBER 08, 2014**

Appellant, Terrell Lewis, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas following a nonjury trial at which he was found guilty of possession and possession with intent to deliver controlled substances.[1] Appellant contends that the evidence was insufficient to sustain the guilty verdicts. We affirm.

On August 22, 2012, at 10:00 p.m., several officers of the Philadelphia Police Department conducted undercover surveillance on the 300 block of

---

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(16), (30).

East Tioga Street. The trial court credited the following testimony of Officer

Walter Bartle setting forth the factual background to Appellant's conviction.[2]

> I set up a surveillance on the corner of Water and Tioga Streets for narcotics sales. Upon setting up my surveillance, I parked my vehicle on the northeast corner of Water and Tioga facing northbound on Water Street. [Appellant] was standing on the southeast corner in front of a convenience store. At that point he wasn't paying attention or at least not looking in our direction while we parked our vehicle. I was with Officer Banning, Officer Riley, and Officer Hulmes at this point.
>
> I would say about ten minutes or so into my surveillance of the corner, [Appellant] wasn't doing anything out of the ordinary. [Appellant then] actually walked over towards our vehicle, towards the northeast comer of Water and Tioga Streets. He then bent down on the curb on that corner where he picked up a black plastic bag [which was located by the right rear tire of a car parked on Tioga Street], and this is approximately ten feet behind my vehicle.
>
> From inside of that bag, [Appellant] picked out three glass jars. I didn't need binoculars; I was close enough to see. They're very consistent with marijuana packaging that I'm familiar with at this location. [Appellant] put the bag back down on the curb, placed [the] jars into his pocket. He was wearing black shorts at this time and had on a black tank top. At that point [Appellant] began to walk southbound on Water Street.
>
> At that point we exit our vehicle, myself and my backup officers. We were following behind [Appellant]. Officer Hulmes and Officer Riley were in front of me. . . . Officer Hulmes and Officer Riley, for whatever reason, stopped [Appellant]. . . .

---

[2] Officer Bartle testified at a suppression hearing conducted immediately before the nonjury trial on March 11, 2013. The suppression record was incorporated as part of the trial record.

* * *

At that point Officer Riley relayed that he had three jars that he believed to be marijuana that was on [Appellant's] person. At that point Officer Hulmes placed the handcuff on [Appellant's] right wrist and attempted to place him in custody. I could see [Appellant] push Officer Hulmes around the chest area and then run southbound on Water Street. Officer Hulmes quickly gave chase.

At that point both Officer Hulmes and [Appellant] were approaching Ontario Street, where they both turned east on Ontario. [Appellant] being much farther ahead than Officer Hulmes.

At that point I went back to my vehicle and Officer Riley did to alert backup officers. Officer Riley and myself went to the curb where [Appellant] picked up that black bag. In my presence, Officer Riley recovered the bag that contained 12 glass jars with white lids all containing alleged marijuana. 10 rounds of bubble containers all with red lids, also containing alleged marijuana. Along with seven jars with purple lids containing alleged PCP.

* * *

[B]ased on Officer Hulmes' observations and the radio calls coming over the 25th district police band, we went to 3406 A Street, the letter A, which is the first block east of Water Street. Through efforts by my backup officers and marked district uniformed officers, we entered a property of 3406 A Street. Once in the basement, Officer Hulmes directed us [to] wet footprints . . . leading to the back wall of the basement. Officer Hulmes and Officer Wright were towards the back of the basement; I was in the front of the basement with uniformed officers.

[T]he basement of this house was cold and wet, minimal light, and was not finished. There was, like, schist stone. And the back part of the basement, which would have been under the kitchen section, . . . there was a hole cut out where there was dirt and pipes which would have been the kitchen pipes and no light and it was dark.

- 3 -

Officer Hulmes, with his flashlight, alerted everyone else that he could see [Appellant] with no shirt on at this point, still with the handcuff on his right wrist, inside of that hole attempting to crawl under the kitchen floor boards.

At that point Officer Hulmes is the only one who could fit under there and regain custody of [Appellant]. I identified [Appellant]; so did Officer Hulmes and Officer Riley at the time that he was stopped again.

Officer Hulmes extracted [Appellant] from the hole where he then placed the other cuff on his left wrist. At that point [Appellant] had no shirt on and changed from his shorts he had on [to] very tight fitting jeans that could not button in the front, and [Appellant] was very sweaty.

At that point [Appellant] was in custody, he was identified, and that concluded our investigation. There was nothing recovered from [Appellant]; no money[ and] no narcotics.

N.T., 3/11/13, at 6-11.

Officer Kevin Keys also testified as an expert witness for the Commonwealth. Officer Keys opined that the black plastic bag was a "stash location." *Id.* at 49. The officer concluded that the narcotics in the bag were possessed with the intent to distribute because (1) the bag contained a combination of marijuana and PCP, (2) the marijuana was packaged in $5 and $10 containers, and (3) no paraphernalia for using drugs was found. *Id.* at 49-51.

The trial court found Appellant guilty of possession and possession with intent to deliver, but found him not guilty of possession of a small amount of marijuana, resisting arrest, and escape. On June 4, 2013, the

court sentenced him to two to four years' imprisonment.[3] This timely appeal followed.[4]

Appellant's sole contention is that the evidence was insufficient to prove that he possessed the drugs in the black plastic bag. Appellant's Brief at 4. In support, Appellant refers to the principle that "[w]hen two equally reasonable and mutually inconsistent inferences can be drawn from the same set of circumstances," a fact finder "is not permitted to guess which inference it will adopt." *Id.* at 11 (citing, *inter alia*, **Commonwealth v. Woong Knee New**, 47 A.2d 450, 468 (Pa. 1946), **Commonwealth v. Davis**, 458 A.2d 248, 250 (Pa. Super. 1983)). He argues that "[t]aking something from a bag that is on the street **may** indicate ownership of the bag or a taking of property of another or from an item appearing to be abandoned." *Id.* at 13 (emphasis in original). He also emphasizes that he was not engaged in suspicious behavior in the ten minutes after the police officers saw him on the corner, and that the officers did not see him preparing or engaging in any suspected transactions. *Id.* at 12. Thus, Appellant concludes the trial evidence only established equally reasonable

---

[3] Because Appellant had a prior record score of five, the two-to-four year sentence fell within the standard minimum range recommended by the Sentencing Guidelines. **See** N.T., 6/4/13, at 3-4.

[4] Although Appellant filed his notice of appeal thirty-one days after the entry of the sentence, the thirtieth day after sentencing was the July 4th holiday. Therefore, his notice of appeal was timely filed. **See** 1 Pa.C.S. § 1908. Appellant also filed a court-ordered Pa.R.A.P. 1925(b) statement after timely requesting an extension of time, which the trial court granted.

inferences: either he was guilty because he "owned" the bag or he was innocent of intending to deliver the drugs in the bag because the bag belonged to another. *Id.* We disagree.

Our standard of review is well settled.

> The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. McCall*, 911 A.2d 992, 996 (Pa. Super. 2006) (citation omitted).

> Section 780-113(a)(30) of The Controlled Substance, Drug, Device and Cosmetic Act prohibits the following acts:
>
> > [T]he manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating,

> delivering or possessing with intent to deliver, a counterfeit controlled substance.
>
> The Commonwealth establishes the offense of possession with intent to deliver when it proves beyond a reasonable doubt that the defendant possessed a controlled substance with the intent to deliver it.
>
> To determine whether the Commonwealth presented sufficient evidence to sustain [a] conviction for possession with intent to deliver, all of the facts and circumstances surrounding the possession are relevant and the elements of the crime may be established by circumstantial evidence. Furthermore, possession with intent to deliver can be inferred from the quantity of the drugs possessed along with the other surrounding circumstances.

*Commonwealth v. Little*, 879 A.2d 293, 297 (Pa. Super. 2005) (citations omitted).[5]

Instantly, the Commonwealth's expert witness, Officer Keys, testified that the subject bag containing the marijuana and PCP was a "stash location" consistent with dealing and not personal consumption of drugs. N.T., 3/11/13, at 49-51. The expert also testified that the packaging and types of drugs were consistent with the intent to distribute. *Id.* Moreover, there is no dispute that Appellant momentarily possessed the bag when he retrieved it and took out three glass vials of marijuana.

With respect to Appellant's argument that the Commonwealth failed to exclude the possibility that the bag belonged to another, we note that

---

[5] Because Appellant's conviction for possession of a controlled substance under 35 P.S. § 780-113(a)(16) is a lesser-included offense of possession with intent to deliver, we will only consider the sufficiency of the evidence adduced with respect to the count of possession with intent to deliver.

arresting officer saw Appellant standing on a street corner in front of a closed convenience store for ten minutes. *Id.* at 6, 15. After ten minutes, Appellant went to the area between the rear wheel well of a car parked on Tioga Street and the curb. He picked up the black plastic bag, which appeared to be a piece of trash, took three vials from the bag, and put the bag back. *Id.* at 7, 13. Appellant was the only person observed accessing the bag. *Id.* at 17.

Furthermore, after observing Appellant take the suspected marijuana from the bag, undercover police officers followed him as he went around the corner onto Water Street. *Id.* at 7, 46. They observed a second male on Water Street "going, 'Yo, yo' to [Appellant]." *Id.* at 46. The officers announced that they were police officers, at which time the second male turned around and Appellant turned to face the officers.[6] *Id.* The officers subsequently attempted to place Appellant in custody, but he fled. *Id.* at 44-45.

In light of this record and mindful of our standard of review, we cannot agree with Appellant's contention that it was an equally reasonable inference that he was not responsible for the entire contents of the bag. The evidence, when viewed in a light most favorable to the Commonwealth, established that Appellant was the only person to access a cache of drugs,

---

[6] No further testimony was adduced regarding the second male who called out to Appellant.

that he placed the bag back in its hiding spot, and that he proceeded to an area where a second individual was calling out to Appellant. Thus, there was a reasoned basis for the trial court to conclude that Appellant was not merely stealing another dealer's drugs, but used the black bag as a hidden supply and was attempting to engage in a drug deal. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/8/2014