*Heiple, Muntz v. Commonwealth of Pennsylvania,* 674 A.2d 328 (Pa.Cmwlth.1996).

676 A.2d 266

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Michael H. WILKES, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 26, 1996.

Filed May 9, 1996.

James F. Geddes, Jr., Wilkes-Barre, for appellant.

Peter Paul Olszewski, Jr., Dist. Atty., Wilkes-Barre, Melissa A. Berlot, Asst. Dist. Atty., Nanticoke, for appellee.

Before McEWEN, President Judge, CIRILLO, President Judge Emeritus, and CAVANAUGH, DEL SOLE, BECK, TAMILIA, POPOVICH, JOHNSON and HUDOCK, JJ., en banc.

POPOVICH, Judge.

In the present appeal, we are asked to review the decision of the Court of Common Pleas of Luzerne County wherein the court determined that the evidence was sufficient to sustain appellant's convictions for theft by unlawful taking and theft by deception. 18 Pa.C.S.A. §§ 3921, 3922. Upon review, we disagree with the trial court's conclusions. Rather, we find the present facts, when viewed in a light most favorable to the Commonwealth as verdict winner, reveal nothing more than a business transaction which went awry, and we are convinced that appellant did not possess the necessary *mens rea* to

commit either crime. Nothing in the record justifies the use of criminal prosecution to collect a simple business debt.[1]

■ "The test of the sufficiency of the evidence in a criminal case is whether, viewing the evidence admitted at trial in the light most favorable to the Commonwealth and drawing all reasonable inferences in the Commonwealth's favor, there is sufficient evidence to enable the trier of fact to find every element of the [crime] charged beyond a reasonable doubt." *Commonwealth v. Carter*, 329 Pa.Super. 490, 495–96, 478 A.2d 1286, 1288 (1984); *Commonwealth v. Peduzzi*, 338 Pa.Super. 551, 553–55, 488 A.2d 29, 31–32 (1985). Applying the foregoing standard, the record reveals the following:

Appellant, a New York resident, operated a business called European Automobiles, Inc. His company was engaged in the import and export of European automobile components, chemicals and related products. In August of 1993, appellant received an order for a large quantity of Castrol motor oil from an overseas client. In attempting to fill the order, appellant contacted A & A Auto Parts Stores, Inc., in Luzerne County. A & A indicated that it could fill the order, and appellant "faxed" Patrick Judge, A & A's general manager, a purchase order for 1200 cases of Castrol 10W–40 motor oil with twelve quarts per case. The price was $1.26 per quart which amounted to $18,144.00, to be paid upon delivery. It is significant to note that the purchase order also indicated that appellant required the oil to be from new stock with the current National Football League advertising program. N.T., 4/15/94, p. 21.

On August 19, 1993, appellant then dispatched a truck to A & A's warehouse to pick up the oil, and appellant drove to A &

---

1. Appellant also questions: 1) Did the jury improperly disregard the Court's instructions on the essential element of intent; 2) Did the lower court improperly deny appellant's pre-trial motions; 3) Did the lower court improperly deny appellant's demurrer and motion for directed verdict; 4) Did the lower court improperly admit Commonwealth exhibits nos. 2, 3, 4 and 5 over objection; and 5) Did the lower court improperly deny appellant's requested points for charge nos. 1 and 9? Given our resolution of appellant's challenge to the sufficiency of the evidence, we need not address the remaining issues.

A's headquarters. Once there, appellant issued a check for $ 18,144.00 to Brian Durkin, assistant manager of the Moosic A & A Auto Parts store in exchange for 1,200 cases of Castrol motor oil. *At time the check was issued, appellant had approximately $ 28,000.00 in the account upon which the check was drawn.* N.T., 4/15/94, pp. 84, 100. The cases of oil were then loaded onto the cargo container. During the loading process, appellant noticed that the cartons of oil were embossed with an expired N.F.L. promotion, rather than the current N.F.L. advertising program as requested. Appellant discussed the problem with Mr. Durkin, and, although no resolution of the problem was reached because Mr. Judge was unavailable, appellant accepted the oil. The motor oil was loaded onto a cargo freighter and shipped to Croatia the following morning.

Appellant attempted to contact Mr. Judge over the weekend in order to negotiate a reduction in the price of the oil because of the expired promotion on the Castrol oil cartons. On Monday, August 23, 1993, appellant and Mr. Judge discussed his problem with the oil and appellant demanded a reduction in the price of the oil because of the out-dated promotion. He thought the lack of the current N.F.L. advertising program on the carton reduced the value of the order by as much as $4,500.00. After a number of telephone conversations with appellant concerning the matter, Mr. Judge offered various alternatives, including return of the oil, coupons for the current or up-coming Castrol promotion or a nominal discount. N.T., 4/15/94, pp. 110–111. However, the alternatives offered by Mr. Judge were unacceptable to appellant since the product had already been shipped to Croatia and the oil cases did not bear the current N.F.L. promotion as specified in the purchase order. N.T., 4/15/94, pp. 107, 110.

Appellant testified that he stopped payment on the check on August 25, 1993, upon advice of counsel after appellant and A & A were unable to reach an agreement regarding a reduction in the price of the oil. N.T., 4/15/94, p. 109. Significantly, at the time appellant stopped payment on the check, over $26,-000.00 remained in the bank account upon which the check

was drawn. N.T., 4/15/94, p. 109. Further, both Mr. Judge of A & A and appellant testified that they had extensive negotiations in an attempt to settle their dispute over the value of the oil. However, those negotiations ended when Mr. Judge contacted the authorities, and the Luzerne County District Attorney's Office filed a criminal complaint against appellant for the charges *sub judice.*

■ Turning now to the merits of appellant's challenge to the sufficiency of the evidence, we cite to the Crimes Code which defines theft by unlawful taking or disposition as follows: "A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S.A. § 3921(a). To be convicted of theft by unlawful taking, appellant must have had a conscious intention to take unlawfully the property of A & A Auto Parts Stores, Inc., for the purposes of depriving it thereof. *See, Commonwealth v. Dombrauskas,* 274 Pa.Super. 452, 418 A.2d 493 (1980); 18 Pa.C.S.A. § 3921(a).

■ The Crimes Code defines theft by deception, in pertinent part, as follows: "A person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally: (1) creates or reinforces a false impression, including false impression as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise." Thus, to be convicted of theft by deception, appellant needed to obtain the property of A & A by deception, intending not to pay for it. *See, Commonwealth v. Bruce,* 414 Pa.Super. 419, 607 A.2d 294 (1992); 18 Pa.C.S.A. § 3922(a). Significantly, we cannot infer that appellant did not intend to pay for the motor oil at the time he took possession of the oil from the fact that he subsequently refused to pay for the oil. 18 Pa.C.S.A. § 3922(a)(1); *Bruce, supra.*

Insight into the analysis of whether appellant did not intend to pay for the motor oil at the time he took possession of the

shipment is found in *Commonwealth v. Bruce,* 414 Pa.Super. 419, 607 A.2d 294 (1992). Therein, the defendant, a broker-wholesaler of lumber, was engaged in a series of business transactions with Steven Ongley, the owner of a sawmill. During their business relationship, the defendant failed to pay for several lumber shipments. Ongley then refused to supply any more lumber, and the defendant transferred his interest in a lumber mill to Ongley in lieu of cash payment. Ongley then supplied an additional thirteen loads of lumber to the defendant without advance payment. Again, the defendant failed to pay for the lumber shipments. Eventually, he did issue a check for three of the loads, but the check was returned by the bank due to insufficient funds. While the defendant subsequently satisfied the "bad" check, he did not pay for the remaining ten loads of lumber. In the end, the defendant owed Ongley approximately $47,000.00.

After several months of negotiations to settle the debt, the defendant was charged with and convicted of theft of the lumber by deception. During their business relations, the defendant represented to Ongley that he was late in his payments because his buyers were not paying him on time. However, at trial, it was clearly established that the defendant sold 90 % of the lumber to a single purchaser who always provided prompt payment, and the defendant was actually using those monies to pay other creditors.

Upon review of the facts, we found that the evidence was insufficient to convict the defendant of theft (of lumber) by deception because there was no evidence that, at the time of the transactions, the defendant did not intend to pay for the lumber. Further, we held that the defendant's intention not to pay for the lumber at the time he received it could not be inferred from the fact alone that he did not subsequently pay for it. *Bruce,* 607 A.2d at 297. Specifically, we stated:

> The record also reveals that the parties entered into extensive negotiations to settle the balance due on the lumber shipments delivered after September 6, 1988, and only after the negotiations failed to bear fruit did Ongley file a private criminal complaint. At no time during their relationship did

appellant conceal his whereabouts or true identity from Ongley.

*Bruce,* 607 A.2d at 297.

Finally, we stated: "Clearly, this case represents nothing more than a failed business relationship and is properly the subject of a civil suit, not criminal action." *Bruce,* 607 A.2d at 297.

In the present case, the Commonwealth's allegations were essentially the same with respect to both theft charges, i.e., that at the time appellant took possession of the oil, he had no intention to pay A & A Auto Parts for the 1200 cases of motor oil. The Commonwealth cites to the fact that, despite A & A's offer of various alternatives to settle this matter, appellant nevertheless stopped payment on the check, and the parties were unable to reach a settlement.

However, upon review, we conclude that the evidence fails to demonstrate that appellant took the oil with the intention of depriving A & A of it or that appellant obtained the oil by deception, intending not to pay A & A. Undisputed testimony revealed that appellant issued A & A a "good" check for the full purchase price of the oil. Further, appellant did not stop payment on that check until after several days of negotiations with A & A regarding a reduction in the price of the oil had produced no agreement. Significantly, at the time appellant stopped payment on the check, the account had more than sufficient funds to satisfy the instrument.

The fact that appellant and A & A were unable to reach an amicable settlement to their dispute over the value of the oil does not prove that appellant never intended to remit the *value* of the oil. Clearly, appellant had the necessary funds to pay for the oil, and at no time during their business transaction did appellant conceal his whereabouts or his true identity. Simply put, there is absolutely no reason why a civil action could not adequately insure full compensation to A & A Auto Parts Stores.

In sum, we are convinced that the present facts reveal nothing more than a business transaction which went awry,

and we find nothing in the record which justifies the use of criminal prosecution to collect a simple business debt. Accordingly, we reverse appellant's conviction for theft by unlawful taking and theft by deception. *Cf., Bruce, supra.*

Judgments of sentence vacated. Jurisdiction relinquished.