J-S12005-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER JACKSON MARTELLA | : | |
| | : | |
| Appellant | : | No. 1588 MDA 2018 |

Appeal from the Judgment of Sentence Entered May 18, 2018
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0002018-2017

BEFORE: BOWES, J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.: **FILED MARCH 19, 2019**

Christopher Jackson Martella appeals from the judgment of sentence of six to twenty-three months of imprisonment, followed by four years of probation, after a jury convicted him of theft by deception. We affirm.

The trial court offered the following summary of the facts presented during Appellant's trial.

On February 18, 2017, Mark Haas contacted [Appellant] regarding a Facebook advertisement. The advertisement was to sell a 2007 Ford F-250 4x4. The original advertisement was requesting $15,500. After several messages back and forth, [Mr.] Haas agreed to buy the vehicle for $15,000. A purchase agreement was drawn up for purchase of the truck "as is." The agreement was never signed by either party but both parties reviewed the agreement and through messages, an agreement to sell the car per the purchase agreement was made. On February 20, [Appellant] informed Mr. Haas that there were mechanical problems with the truck. Mr. Haas and [Appellant] continued to talk about the mechanical issues regarding the truck and, at the end of the conversation, Mr. Haas agreed to go through with the sale. [Appellant] informed Mr. Haas that the repairs would be made by February 23. A new price of $14,250 was agreed upon

by both parties. On February 22, immediately after the new price was agreed upon, Mr. Haas went to the bank and wired the funds via bank transfer to [Appellant's] account. [Appellant] informed Mr. Haas in a message that he had received the funds.

There were various messages sent and received between Mr. Haas and [Appellant] between February 22 and March 4, 2017[,] but no date was set up for Mr. Haas to receive the truck. On March 5, [Appellant] messaged Mr. Haas saying that he will be sending the money back in two days. He did not send the money on March 7, but he responded to Mr. Haas's message on March 8 saying that he would call him back to see if he could wire the money back to Mr. Haas. However, he later informed Mr. Haas that the wire transfer would happen on March 10. The money was never transferred. On March 30, [Appellant] informed Mr. Haas that he could pick up the truck in April. Around this time, Mr. Haas had learned that the truck was not a 4x4 but was actually a 2x4 that had been converted to 4 wheel drive. The original advertisement had also misrepresented the model of the truck. Mr. Haas told [Appellant] that he wanted his money back and that he no longer wanted the truck. Communication stopped between the two parties on March 31. No money was returned to Mr. Haas.

Trial Court Opinion, 11/27/18, at 2-3.

A jury convicted Appellant on March 13, 2018, and Appellant was sentenced as indicated above on May 18, 2018. Appellant filed a timely post-sentence motion, which the trial court denied on August 27, 2018. Appellant filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following questions for our review.

A. Whether the guilty verdict . . . was in error as the evidence presented at trial was insufficient to prove beyond a reasonable doubt that Appellant had the requisite intent to deceive where the alleged victim contacted Appellant in response to a Facebook group listing for the sale of the vehicle, Appellant gave his correct phone number, address, email

- 2 -

address; where the truck was to be sold "as is" and there was a misunderstanding between the parties as to whether the truck was a 4x4, and the alleged victim refused the vehicle after Appellant attempted to remedy the situation after being contacted by the police?

B.   Whether the guilty verdict . . . was in error and against the weight of the evidence where the evidence showed that the interaction between Appellant and the alleged victim was a contractual dispute rather than a criminal matter.  Specifically, Appellant had numerous contacts with the alleged victim to resolve the issue, there was a mistake as to whether the truck was a 4x4, and Appellant again offered the truck to the alleged victim who refused to take it?

Appellant's brief at 5.

We first consider the standard applicable to our review of Appellant's

sufficiency challenge.

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary.  In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence.  The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence.  Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

***Commonwealth v. Williams***, 176 A.3d 298, 305-06 (Pa.Super. 2017)

(citations and quotation marks omitted).

- 3 -

Appellant was convicted of theft by deception which is defined as follows, in relevant part.

> A person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally:
>
> (1) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise[.]

18 Pa.C.S. § 3922(a)(1). Hence, because mere failure to perform a promise cannot alone support a finding of intent to deceive, the Commonwealth's evidence in this case must establish not only that Appellant wrongfully took or kept Mr. Haas's property, but that Appellant intended to do so from the start. *See*, *e.g.*, *Commonwealth v. Grife*, 664 A.2d 116, 120 (Pa.Super. 1995).

In arguing that the Commonwealth did not meet its burden, Appellant relies upon two cases involving breached contracts in which this Court held the evidence was insufficient to prove intent. In *Commonwealth v. Bruce*, 607 A.2d 294 (Pa.Super. 1992), Bruce was a broker who bought lumber from sawmills and found buyers for it. Bruce approached Ongley, a sawmill owner, and informed Ongley that Bruce had purchase orders from reputable customers. The parties established an ongoing business relationship. Bruce was often delinquent in making payments, claiming that he had to wait to receive payment from the buyers before he could pay Ongley, and he once

submitted a check that was returned for insufficient funds. After more than one year of this, when Ongley was ultimately unable to recover approximately $47,000 he was owed, despite the parties' lawyers engaging in attempts to resolve the matter, he filed a private criminal complaint. At trial, the Commonwealth produced evidence that Bruce actually had received payments from buyers at the time he told Ongley that the payments were outstanding, and that Bruce often promised to pay Ongley more money than Bruce had received for the lumber. Bruce testified that he intended to pay Ongley, but cited excuses for his failure to do so, such as the bankruptcy of a client. Bruce was convicted of theft by deception and appealed. This Court reversed, holding that, although the evidence showed that Bruce was a lousy businessman and lied about receipt of payments, there was "no evidence that, at the time of the transaction, appellant did not intend to pay for the lumber." *Id*. at 297. Rather than establishing theft by deception, the Court stated that the case was "nothing more than a failed business relationship and [was] properly the subject of a civil suit, not criminal action." *Id*.

Similarly, in *Commonwealth v. Wilkes*, 676 A.2d 266 (Pa.Super. 1996) (*en banc*), Wilkes was the operator of an automobile products import/export company. In order to fulfill an overseas order for motor oil, he contracted with a Luzerne County parts store for 1200 cases of motor oil "from new stock with the current National Football League advertising program." *Id*. at 268. Wilkes drove to the store to retrieve the oil, but discovered that

- 5 -

it included an expired promotion rather than the current one requested. Although the matter was not addressed to Wilkes's satisfaction because the store's general manager was unavailable at the time, Wilkes accepted the oil and issued a check for the full contract price. Wilkes subsequently attempted to negotiate a price reduction with the manager, contending that the expired-promotion oil had substantially less value, but they could not reach an agreement. Wilkes stopped payment on the check, although there were sufficient funds in the account to cover it, and the manager contacted the authorities. Wilkes was convicted of theft by deception and filed an appeal. This Court, relying on **Bruce**, held that the evidence showed "nothing more than a business transaction which went awry," not that Wilkes never intended to pay for the actual value of the oil he received. **Id**. at 270. Specifically, the Court noted that Wilkes had the necessary funds to pay the contract price, and that he never attempted to conceal his identity or location. **Id**. Accordingly, we reversed.

We disagree with Appellant's contention that the instant case is also just "an ordinary contractual dispute," Appellant's brief at 24, as our review of the record reveals sufficient evidence of deceptive intent. The Commonwealth showed that Appellant offered to sell a vehicle for which he did not have title. N.T. Trial, 3/13/18, at 75. In his advertisement, Appellant represented the 2007 F-250 2x4 XL 10 for sale to be a 2007 F-250 4x4 Lariat. **Id**. at Commonwealth Exhibit 1. Although the truck had been converted to a 4x4,

this fact, which decreased the value substantially, was not disclosed, even when Mr. Haas presented a written agreement identifying the vehicle by a vehicle identification number ("VIN") indicating that Mr. Haas was purchasing a factory 4x4. *Id*. at 77. Further, while the truck had Lariat seating, it did not have all of the upgrades of the Lariat model. *Id*. at 78. Mr. Haas wired money for the truck to Appellant on February 22, 2017. Appellant still did not have the title to the truck when he accepted the money. *Id*. at 75.

Although the parties had been in regular contact prior to that date, Appellant's responsiveness began to wane immediately thereafter. Appellant did not take a call from Mr. Haas, but texted on February 26th to say that he would call Mr. Haas back in the morning. *Id*. at Commonwealth's Exhibit 4. Appellant did not call, but texted that night to say he had a "crazy day" and would call the next day. *Id*. He did not call the next day, citing traffic as an excuse. *Id*. There were then more "crazy days," and Appellant promised to call the evening of March 2nd. Appellant did not call. Nor did he acknowledge messages sent by Mr. Haas the next two days. On March 5th, Appellant informed Mr. Haas that Appellant's phone had broken and that his mother was ill, and he would be sending Mr. Haas's money back in two days, on a Tuesday. *Id*. at Commonwealth Exhibit 5. Appellant did not send the money, again invoking his mother's illness, but said he would send it by Friday at the latest. *Id*. Appellant did not send the money on Friday, March 10th. He made no contact with Mr. Haas between then and March 30th, when, after the police

had contacted Appellant on March 28th, Appellant sent Mr. Haas a message informing him that he could pick the truck up in April. *Id*.

Hence, the verdict is supported not merely by the fact that Appellant did not perform his promise, but by additional evidence that gives rise to the reasonable inference that Appellant obtained Mr. Haas's money by creating a false impression as to the value of the truck and then immediately beginning stall tactics to avoid producing the truck or returning the money. *Accord Commonwealth v. Fisher*, 682 A.2d 811, 813-14 (Pa.Super. 1996) (holding evidence of intent sufficient where defendant convinced victims to trust him, misrepresented the condition of the property he sold to victims, and repeatedly failed to return money when requested); *Grife*, *supra* at 120 (holding *mens rea* for theft by deception was sufficiently proven where falsified records evidenced the defendant's "purposeful intent to give his lenders less than what they bargained for in order to procure their property").

Appellant attempts to argue away this evidence by pointing to other evidence that could support a finding that no intent to deprive Mr. Haas of his money was present. For example, he highlights that he gave Mr. Hass accurate identification and contact information, that he *sua sponte* disclosed to Mr. Haas mechanical problems that he discovered prior to receiving payment, and that Appellant appeared at the police station on a date selected by Mr. Haas to deliver the truck or return the money, but Mr. Haas failed to appear. Appellant's brief at 22-23.

Appellant essentially asks this Court to hold that the evidence favorable to Appellant is entitled to greater weight than the evidence of his guilt. That is not our role in reviewing a sufficiency-of-the-evidence claim. **See Williams**, **supra** at 306 ("It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and . . . as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder."). Further, the Commonwealth's evidence need not preclude every possibility of innocence. **Id**. Therefore, Appellant's first issue merits no relief.

With his remaining issue, Appellant contends that the verdict was against the weight of the evidence. The following principles apply to our review of that claim.

> Appellate review of a weight claim is a review of the [trial court's] exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

**Commonwealth v. Clay**, 64 A.3d 1049, 1054-55 (Pa. 2013).

Appellant argues that the jury apparently disregarded the evidence in his favor in reaching its verdict, namely that he provided his real name and contact information, that he volunteered to Mr. Haas the mechanical problems

with the truck although Mr. Haas had agreed to buy it "as is," and that Appellant had indicated his willingness to deliver the truck or return the money. Appellant's brief at 27-29. Appellant contends that these facts are "quite clearly not indicative of one who is attempting to swindle or deceive someone into purchasing an inferior truck," and that "the jury's failure to give them adequate consideration 'shocks the conscience.'" *Id*. at 28, 30.

The trial court disagreed, concluding that there was ample evidence to establish that Appellant "had never intended or may not even have been able to give the truck to Mr. Haas." Trial Court Opinion, 11/27/19, at 8. From its review, the trial court found no reason to disturb the jury's weighing of the evidence. *Id*.

Our review of the testimony and exhibits offered at trial reveals no indication that the trial court's determination that the verdict did not shock its conscience was the product of an error of law, was manifestly unreasonable, or was "a result of partiality, prejudice, bias or ill-will." *Clay*, *supra* at 1055 (internal quotation marks omitted). Accordingly, Appellant is entitled to no relief from this Court on his weight-of-the-evidence claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/19/2019