**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GEROME NELSON | : | |
| | : | |
| Appellant | : | No. 603 EDA 2022 |

Appeal from the PCRA Order Entered January 27, 2022
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-CR-0006289-2018

BEFORE:  KUNSELMAN, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                **FILED FEBRUARY 1, 2023**

Gerome Nelson ("Nelson") appeals from the order denying his first petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1] We affirm.

The PCRA court provided the following factual and procedural history:

> [In] December [] 2017, a backpack containing a large quantity of heroin was discovered on the property of a middle school in Bensalem Township, Bucks County.  The backpack contained approximately 10,000 bags of heroin which had an estimated street value of $100,000.00.  The heroin packaging was later swabbed for DNA evidence.  Those swabs were then sent to the Bode Cellmark Forensics laboratory for analysis.
>
> Subsequent investigation revealed that a woman inadvertently left the backpack at the school.  That woman was later identified and, when interviewed, admitted to conspiring with [Nelson] to distribute the heroin found in the backpack.  Specifically, she advised police that she received the backpack of

---

[1] **See** 42 Pa.C.S.A. §§ 9541-9546.

heroin from [Nelson] and agreed to hold it for him. She stated that she thereafter met him at various locations with the bag so that he could complete drug transactions. She further stated that after she misplaced the heroin, [Nelson] sent her text messages threatening to kill her and "knock her head off" in an attempt to recover his "shit." Those threatening messages were ultimately traced to [Nelson's] cellphone.

Police then conducted surveillance of [Nelson] and observed him participate in multiple heroin transactions, including a hand-to-hand transaction in Morrisville, Falls Township[ in] August [] 2018. [Nelson] was arrested on August 30, 2018. Following his arrest, [Nelson] was transported to the Bensalem Township Police Department. During processing, [Nelson] made several [inculpatory] statements. After apologizing to his mother several times, he stated that "he's not a big-time guy" and that he "sells to junkies and nobody's putting a gun to their head." He further stated that he was "not Nino Brown," referring to the character of a rising drug lord in the film "New Jack City." While at the police station, [officers took a buccal swab of the inside of Nelson's mouth.] [In] September [] 2018, Bensalem Township Police obtained a search warrant to have [the afore-mentioned] buccal swab submitted for DNA analysis. That analysis determined that the DNA found on the heroin packaging matched that of [Nelson].

[In] March [] 2019, [plea] counsel . . . filed a motion to suppress the buccal swab DNA sample obtained from [Nelson] at the time of his arrest and to suppress statements [he] made . . ., including those made during processing.

＊ ＊ ＊ ＊

[In] October [] 2019, [following hearings on the suppression motion, and] while a decision on the motion was pending, Bensalem police obtained two search warrants [to] obtain[] [Nelson's] DNA[:] one search warrant for [Nelson's] personal effects in his cell in the restricted housing unit at Bucks County Correctional Facility[,] and one search warrant to obtain a buccal swab from [his] person. Pursuant to the search warrant for [Nelson's] personal effects, police seized [his] toothbrush. Pursuant to the search warrant for [Nelson's] person, police obtained a second buccal swab. The second buccal swab was submitted for DNA analysis and comparison with the DNA found on the heroin discovered at the middle school. Bode Cellmark

- 2 -

Forensics later determined that the sample of [Nelson's] DNA matched the DNA on tape securing a bundle of heroin . . ..

On November 12, 2019, [the court] granted [Nelson's] motion to suppress the [first] buccal swab DNA sample [obtained] on the date of [Nelson's] arrest, finding that [his] consent to provide the sample was not voluntary[, and that the swab occurred prior to the issuance of a warrant]. [The court] denied [Nelson's] motion to suppress the incriminating statements [he] made during processing.

On November 13, 2019, the day the case was scheduled for trial, [Nelson] filed a motion to suppress the search warrant for [his] person and the DNA evidence obtained [from the second buccal swab] on the basis that his DNA was not procured from an independent origin so as to permit its admission under the inevitable discovery rule/independent source rule . . .. That motion was not litigated. Rather, [Nelson] decided to accept the Commonwealth's plea offer. Pursuant to the terms of the plea agreement, [Nelson] pleaded guilty to one count of possession with intent to deliver heroin . . ., and was sentenced to a term of incarceration of six to twelve years with a concurrent term of probation. The Commonwealth *nol prossed* the remaining four counts on the criminal information[:] criminal conspiracy to deliver/possess with intent to deliver heroin . . ., criminal use of a communication facility . . ., terroristic threats . . ., and use and/or possession with intent to use drug paraphernalia . . .. [Nelson] did not file a post-sentence motion or a direct appeal. [This plea was an improvement upon the Commonwealth's prior offer of seven and one-half to twenty years of imprisonment.]

On December 8, 2020, [Nelson] filed a *pro se* [PCRA petition. The PCRA court appointed counsel.] [In] April [] 2021, PCRA counsel filed a "no merit" letter pursuant to ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988) and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*) and a petition to withdraw as counsel.

\* \* \* \*

After conducting an independent review of the record, [the PCRA c]ourt determined that a hearing was required to resolve the claim that trial counsel was ineffective in advising [Nelson] to accept the plea offer. . . . [In] August [] 2021, PCRA [c]ounsel

- 3 -

filed an amended PCRA petition and a hearing [occurred]. [Following the evidentiary hearing, the PCRA court denied Nelson's petition b]y order dated January 27, 2022 . . ..

PCRA Court Opinion, 5/18/22, at 1-5 (footnotes, internal citations to the record, and unnecessary capitalization omitted). Nelson timely appealed.

Nelson raises the following issue for our review:

Did the PCRA court err in denying post-conviction relief, and in so doing determine that trial counsel was not ineffective in advising and recommending to [Nelson] that he plead guilty rather than litigat[e] a pre-trial motion to suppress DNA evidence that [Nelson] believe[s] was illegally obtained, tainted by police misconduct, and [not] subject to the independent source doctrine?

Nelson's Brief at vi (unnecessary capitalization omitted).

Our standard of review for an order denying PCRA relief is "whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Parker*, 249 A.3d 590, 594 (Pa. Super. 2021) (internal citation omitted). Further, to prevail on a claim of ineffective assistance of counsel, a PCRA petitioner must demonstrate:

(1) that the underlying claim has arguable merit; (2) that no reasonable basis existed for counsel's actions or failure to act; and (3) that the petitioner suffered prejudice as a result of counsel's error. To prove that counsel's chosen strategy lacked a reasonable basis, a petitioner must prove that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. Regarding the prejudice prong, a petitioner must demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction. Counsel is presumed to be effective; accordingly, to succeed on a claim of ineffectiveness[,]

- 4 -

the petitioner must advance sufficient evidence to overcome this presumption.

***Commonwealth v. Johnson***, 139 A.3d 1257, 1272 (Pa. 2016) (internal citations and quotations omitted).

Nelson argues that the PCRA court erred in denying his petition because plea counsel failed to litigate the suppression motion he had filed and instead advised Nelson to plead guilty. Nelson's Brief at 9, 18, 23, 24. An allegation of ineffectiveness based on counsel's failure to file or litigate a suppression motion is distinct from whether counsel was ineffective for advising a defendant to accept a plea. The decision to litigate a suppression motion is a matter of counsel's professional judgment, and "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." ***Commonwealth v. Johnson***, 179 A.3d 1153, 1160 (Pa. Super. 2018) (internal citation, quotations, and brackets omitted).[2] On the other hand, the "decision to enter a guilty plea is one of the

---

[2] When an allegation of ineffectiveness rests on a failure to ***file*** a suppression motion, the inquiry is "whether the failure to file the motion is itself objectively unreasonable, which requires a showing that the motion would be meritorious. . . . [Further, the] prejudice inquiry [] requires the defendant to establish [] he would have ***filed*** the motion and proceeded to trial instead of accepting the plea . . .." ***Johnson***, 179 A.3d at 1160 (emphasis added); ***accord Commonwealth v. Vealey***, 581 A.2d 217, 219 (Pa. Super. 1990) (noting that where the petitioner asserted that "trial counsel was ineffective in failing to ***file*** a pretrial motion to suppress an illegally obtained confession," the petitioner needed to demonstrate the confession was involuntary, the guilty plea was motivated by the confession, and that counsel "incompetently" advised him to plead guilty) (emphasis added).

fundamental decisions that must be decided by the criminal defendant." *Id*. at 1160. Thus, when the issue is not whether counsel failed to file or litigate a suppression motion, but instead that counsel ineffectively advised the defendant to accept a plea, the question is whether the advice itself is constitutionally sound. As this Court has explained,

> [w]here the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. In other words, a defendant need not be apprised of every possible suppression motion as a predicate to a finding that the plea was voluntary, because the decision to seek suppression is left to counsel as a matter of strategy in the event a plea bargain is not reached.

*Id*. (internal citation and quotations omitted). Following successful plea negotiations and a plea of guilty, a defendant is bound by his statements made during the plea colloquy. *See Commonwealth v. Reid*, 117 A.3d 777, 783 (Pa. Super. 2015).

Nelson argues that plea counsel filed a meritorious suppression motion, but "prior to litigating the issue, counsel recommended to [Nelson] to abandon what [Nelson] felt was the most important issue in the case and to plead guilty." Nelson's Brief at 21. Nelson maintains that this advice was unreasonable as it relied on a misapprehension of the independent source rule. *See id*. Accordingly, Nelson contends that, had plea counsel "correctly" discussed the law with him, he would not have pleaded guilty but instead gone to trial. *See id*. at 23-24.

The PCRA court considered Nelson's first issue and determined that this ineffectiveness claim merited no relief. The court explained:

* * * *

In the instant case, [Nelson] has made . . . no showing whatsoever that the advice to accept the plea was not within the range of constitutionally competent advice. . . ..

The appropriateness of [plea] counsel's advice must be considered in the context of three very important circumstances. **First**, [plea] counsel had successfully negotiated an extremely favorable plea offer. . . . Since none of the[ charged] offenses merged for sentencing purposes, [Nelson] faced a maximum sentence of [twenty-one and a half to forty-three] years [of incarceration]. His sentencing guidelines called for an aggregate minimum sentence of [thirteen and a half to eighteen years and four months of imprisonment] in the standard range.

**Second**, the specific facts and circumstances of [Nelson's] case involved a multitude of factors that could be considered aggravating factors by a sentencing court[, should Nelson proceed to trial and be convicted, including Nelson's criminal history, the nature of the controlled substance, *i.e.*, heroin, and the fact that the drugs were found in the vicinity of a school, thereby endangering children].

* * * *

**Third**, the likelihood of conviction was extremely high. The evidence against [Nelson], with or without the DNA evidence, was overwhelming. [Nelson's] co-defendant had agreed to testify as a Commonwealth witness. Her testimony regarding their conspiracy to distribute heroin would have been corroborated by [Nelson's] text messages wherein he admitted that the $100,000 worth of heroin was his and wherein threatened to harm his co-conspirator if the drugs were not returned to him. His co-conspirator's testimony, the quantity of heroin involved, evidence regarding police surveillance of [Nelson] engaging in the sale of heroin, and [Nelson's] admission during processing that he "sells to junkies" would be more than sufficient to convict [him] of each of the crimes charged.

Under these circumstances, [plea] counsel's recommendation that [Nelson] accept a plea offer whereby he would only be required to plead to one count of [p]ossession with [i]ntent to [d]eliver and would receive a minimum sentence of [six] to [twelve] years [of imprisonment] was clearly designed to effectuate [Nelson's] interests. Since counsel had a reasonable basis for his advice, he cannot be deemed to have been ineffective.

* * * *

Moreover, the prejudice prong of the ineffective assistance of counsel inquiry requires [Nelson] to establish that he plead guilty due to [plea] counsel's ineffective assistance and that absent that ineffective assistance he would have pursued the motion and proceeded to trial instead of accepting the plea. . . . In the instant case, [Nelson] did not meet this burden of proof. At the time the plea was entered[,] and at the PCRA hearing[,] [Nelson] testified that he entered his plea, not due to any inadequacy in [plea] counsel's representation but rather to receive a reduced sentence and to put the matter behind him. At the time he entered the plea[, Nelson] testified that no one was forcing him to accept the plea offer[,] stating, "I got family that I need to get back home to. I need to put this behind me." At the PCRA hearing, [Nelson] testified that prior to entering his plea, [plea] counsel had advised him that they had a chance to win the case. He was then asked why he "ultimately plead guilty." In response, he testified, "It was Bucks County. I know the Commonwealth and I know – I don't want to go to jail for that long. I don't want to waste my life rotting in prison." He further testified that he just wanted to "get everything over." This testimony is consistent with that of trial counsel who testified that "[Nelson] wanted to try to get the best deal he could, and that's what we did."

Th[e PCRA c]ourt did not find [Nelson's] testimony [at the PCRA hearing] that trial counsel forced him to plead guilty and . . . [that] he felt that trial counsel "gave up on [him]" credible. Not only were these assertions unsupported and inconsistent with his testimony [at that same hearing] that he entered the plea to avoid a longer jail sentence and to "get everything over," they were also inconsistent with his answers in the written guilty plea colloquy he executed and his responses during the on-the-record guilty plea colloquy.

* * * *

Here, [Nelson's] PCRA claims are belied by his guilty plea colloquies and therefore cannot serve as a basis for relief.

PCRA Court Opinion, 5/18/22, at 7-11 (footnotes and citations to the record omitted).

Following our review, we conclude the PCRA court's determination is supported by the record and free of legal error. We note initially that plea counsel apprehended Nelson's suppression issue and accordingly filed a suppression motion arguing that the fruits of the second search, should be suppressed as fruit of the poisonous tree following the first warrantless search. **See generally** Motion to Suppress Physical Evidence, 11/18/19; **accord** N.T., 8/9/21, at 9 (counsel explaining, "Well, I gave it a shot. I thought that perhaps we could argue the new warrant was tainted by the illegal procedure from the first search, which was done without a warrant . . .."). Counsel explained that the first swab occurred without a warrant, and though police "got the warrant later," the trial court suppressed that swab because it had been obtained non-consensually and prior to the warrant being issued. **See** N.T., 8/9/21, at 86. However, officers "got a second warrant based – not upon anything found by the illegal first search. They had plentiful probable cause to get a warrant the first time. They just didn't get it." **Id**. at 86-87. Counsel further explained that even if the motion had been successful, the Commonwealth could have appealed it. **See id**. at 28. Saliently, counsel also opined that, even though the DNA evidence was "the most important piece of

evidence [the Commonwealth] had," if the Commonwealth had opted to try Nelson without the DNA evidence—the evidence "could have been" sufficient for a jury to convict Nelson. *Id*. at 28-29. Counsel noted that the evidence apart from the DNA included Nelson's inculpatory statements, testimony by the "female witness," evidence from a controlled buy, and text messages from Nelson demonstrating his possession of the heroin with intent to deliver. *See id*. at 19. In light of the above, the parties "did not quite get around to litigating [the motion] because [counsel] was trying to negotiate a plea with the prosecution." *Id*. at 10.

Plea counsel further explained that he discussed with Nelson the facts of, and law applicable to, this case, and that, had Nelson so desired, "[w]e would have litigated to suppression, and then presumably we would have had a jury trial." *Id*. at 17-18. Prior to Nelson's guilty plea, counsel reviewed Nelson's options with him, and it was "[a]bsolutely" Nelson's decision, ultimately, to plead guilty. *Id*. at 20. Counsel negotiated the Commonwealth down from its initial plea offer of seven to twenty years of incarceration to six to twelve years. *See id*. at 22.[3] We also note that, at Nelson's plea hearing, he agreed he had had sufficient time to talk to counsel prior to entering his plea, and that he understood, when advised by the court, that he was "giving up . . . the right to litigate and appeal pretrial motions." *See* N.T., 11/13/19,

---

[3] The maximum penalty for the charged offenses was forty-three years. *See* N.T., 10/1/19, at 8.

at 5, 22-23 (unnumbered); *accord id*. at 10, Ex. D-1, Guilty Plea Colloquy, 11/13/19, at ¶ 26 (Nelson indicating his understanding that, "by pleading guilty you are giving up your right to litigate any pretrial motions, including suppression motions, as well as any issues regarding what evidence would be admissible at trial").[4]

We further note that Nelson admitted at the PCRA hearing that his plea was not motivated by counsel's advice about the suppression motion; instead, although his attorney represented to him that "we have a chance to win," Nelson ultimately pleaded guilty because, "[i]t was Bucks County. I know the Commonwealth and I . . . don't want to go to jail for that long." N.T., 8/9/21, at 37. Because plea counsel filed the suppression motion challenging the evidence of which Nelson complains, the issue here is not whether counsel was ineffective for failing to pursue the suppression motion, but instead whether plea counsel's advice to Nelson, concerning his guilty plea, was constitutionally infirm. *See Johnson*, 179 A.3d at 1160. Under this standard, Nelson failed to carry his burden of demonstrating plea counsel's ineffectiveness. Plea counsel filed the second suppression motion, informed Nelson he would litigate it if Nelson desired, expressed doubt that it would be

_____

[4] Nelson is bound by his testimony and colloquy at his plea hearing. *See Reid*, 117 A.3d at 783.

successful,[5] but noted that even if successful, the Commonwealth could appeal

the determination; alternatively, even if the parties proceeded to trial

_____

[5] We observe that Nelson maintains his suppression would have been granted because the independent source rule requires "true independence" of both the source of the evidence and the investigative team where there was "willful misconduct and malfeasance." *See*, *e.g.*, Nelson's Brief at 20 (citing, *inter alia*, *Commonwealth v. Melendez*, 676 A.2d 266 (Pa. 1996)). However, while the trial court suppressed the first buccal swab because it was obtained non-consensually and prior to the issuance of a warrant, the court notably did not conclude there was willful misconduct or malfeasance. *See generally* Findings of Fact and Conclusions of Law, 11/12/19. The record reveals that, at the suppression hearing, Officer David Clee explained that, for the first buccal swab, he "handed the swab in its paper form out to Mr. Nelson [and] Mr. Nelson removed the two swabs, swabbed the inner cheek of his mouth as directed by me, and he placed the items back in the container[,] at which time I advised Mr. Nelson that he was giving this on his own free will, his consent, and I needed a signature for that." N.T., 10/1/19, at 73. Officer Clee testified that he had not intended to take a non-consensual buccal swab. He explained, "[Nelson] took the swab, he swabbed his mouth. I . . . believed that he wanted to give a sample of his DNA. . . . And it wasn't until I read him the back of the paperwork that he refused, and I recorded that." *Id*. at 122. Following Nelson's refusal to consent, Officer Clee obtained a warrant. Officer Clee explained, "I could have went [to the county prison] after I got the search warrant and obtained [another] sample, but I already had a sample." *Id*. at 121.

It is not a *fait accompli* that Officer Clee's mistaken belief—*i.e.*, that, following issuance of the first warrant for Nelson's DNA, he was not required to obtain a new buccal swab, but could instead use the prior swab—rises to the level of willful misconduct or malfeasance, thereby requiring an independent investigative team for the second warrant. *See Commonwealth v. Katona*, 240 A.3d 463, 478, 481 (Pa. 2020) (limiting the "the independent police team requirement to situations in which the rule prevents police from exploiting the fruits of their own *willful* misconduct," and holding, otherwise, that the "ultimate question . . . is whether the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence at issue here") (internal citations and quotations omitted; emphasis added). Further, there is no question that the police did not rely on the fruits of the first buccal swab in obtaining the second warrant. *Compare* N.T., 8/9/21, at

*(Footnote Continued Next Page)*

following successful suppression, the evidence could still be sufficient to sustain convictions for the charged offenses, which carried a maximum penalty of forty-three years. With this information, Nelson chose to plead guilty. He is therefore due no relief.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/01/2023

_____

12 (plea counsel indicating that "my research indicated that in order to be successful, you have to show some evidence from the illegal warrant was used to get the new warrant, and that just was not the truth") **with Katona**, 240 A.3d at 481 (stating that "[t]he ultimate question . . . is whether the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence at issue here").