J-A05012-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                        :           PENNSYLVANIA
                                          :
               v.                                 :
                                          :
TERRY L. STIVASON                  :
                                          :
           Appellant                 :     No. 639 WDA 2024

Appeal from the Judgment of Sentence Entered April 19, 2024
In the Court of Common Pleas of Butler County Criminal Division at
No(s): CP-10-CR-0001703-2021

BEFORE: MURRAY, J., KING, J., and FORD ELLIOTT, P.J.E.*

MEMORANDUM BY MURRAY, J.:               **FILED: February 24, 2025**

Terry L. Stivason (Appellant) appeals from the judgment of sentence entered following his summary conviction of bad checks.[1] We affirm.

On August 24, 2021, Robert McChesney (the victim), owner of McChesney's Motors, LLC, in Butler, Pennsylvania, completed repairs on Appellant's motorcycle. Affidavit of Probable Cause, 10/1/21, at 1. The cost of parts and labor amounted to $509.86. *Id.* Appellant issued the victim a check for the full amount. However, when the victim attempted to cash the check approximately a week later, the bank informed the victim that the account had insufficient funds. *Id.* Pennsylvania State Police (PSP) Trooper Mohamed Miloua (Trooper Miloua) investigated the incident and charged

---

[1] 18 Pa.C.S.A. § 4105(a)(1).
 *Retired Senior Judge assigned to the Superior Court.

Appellant with one count each of bad checks, theft of services,[2] and theft by deception,[3] all graded as misdemeanors. *Id.*

On December 21, 2021, following a preliminary hearing, all charges were held for court. On June 9, 2022, Appellant filed a writ of *habeas corpus* seeking the dismissal of all charges. Appellant argued "that this matter lacks criminal jurisdiction[,] and is one that can be pursued in the civil courts as the proper remedy." Writ of *Habeas Corpus*, 6/9/22, ¶ 9. The trial court conducted a hearing on July 26, 2022. At the hearing, the Commonwealth withdrew the misdemeanor count of bad checks, "stating that there were sufficient funds in [Appellant's] bank account to cover the check." Opinion and Order, 9/16/22, at 1.[4] The trial court accepted the preliminary hearing transcript as evidence, and entertained legal argument. *Id.* at 1, 3. On September 16, 2022, the trial court granted Appellant's writ of *habeas corpus* in part by dismissing the theft by deception charge. *Id.* at 3.

On January 19, 2024, the Commonwealth filed a motion to amend the criminal information to include one summary count of bad checks, and to

---

[2] 18 Pa.C.S.A. § 3926(a)(1).

[3] 18 Pa.C.S.A. § 3922(a)(3).

[4] The certified record does not include a transcript of the July 26, 2022, hearing. We therefore rely on the trial court's account of what transpired at that hearing, which neither party disputes.

schedule the matter for a summary trial.[5] The trial court granted the Commonwealth's motion that same date.

On April 19, 2024, the matter proceeded to a nonjury trial. The trial court summarized the testimony adduced at trial as follows:

> [T]he victim[ ] testified that he owns and operates[, McChesney Motors, LLC,] a business that repairs and accessorizes motorcycles …. [Appellant] brought his motorcycle to the business for repair work on August 21, 2021. The work was completed, and [Appellant] arrived at the business on August 24, 2021[,] to pick up his motorcycle[. The victim gave Appellant] an itemized bill[,] which totaled $509.86. The receipt was admitted at trial as Commonwealth's Exhibit "1." [N.T., 4/19/24, at 4-8.] Commonwealth's Exhibit "2" [was] an Armco Credit Union check[,] No. 432[,] in the amount of $509.86[,] issued and signed by [Appellant] on August 24, 2021[,] and given to [the victim] in payment for the work performed.[6]
>
> [The victim] testified that the check was deposited by his wife, probably a couple of days after, and eventually it was returned to him by his bank, First National Bank, for insufficient funds. [The victim] testified that he and/or his wife called [Appellant] several times[,] but were unable to talk with him, either because [Appellant] failed to answer the call or hung up. [The victim] attempted to cash the check a second time on September 1, 2021[,] but that failed because [Appellant] had stopped payment on it. *Id.* at 12-13, 17. [The victim] returned to his business and contacted the [PSP].

---

[5] In its motion, the Commonwealth represented that "both parties stipulate that although the offense grading is now a summary, that the amount of restitution in dispute is $509.86." Motion to Amend, 1/19/24, ¶ 6; *see also* 18 Pa.C.S.A. 4105(b)(1)(iii) (establishing the grading of a conviction for bad checks in an amount between $500 and $1,000 as a misdemeanor of the second degree).

[6] At trial, the victim confirmed that when Appellant retrieved his motorcycle, Appellant did not communicate any dissatisfaction with the work performed by the victim. N.T., 4/19/24, at 10.

[] Trooper [] Miloua testified … that he investigated [the victim's] complaint and attempted to contact [Appellant] on several occasions by phone and by visiting his home. [Trooper Miloua] then contacted [Appellant's bank]. Commonwealth's Exhibit "3" is the letter [Trooper Miloua] provided to the credit union requesting information about [Appellant's] account. Commonwealths' Exhibit "4" is the Armco Credit Union statement of [Appellant's] account activity on August 24, 2021[,] which clearly shows that [Appellant] ordered a stop draft on [C]heck No. 432 in the amount of $509.86. The statement also indicates that the account contained $4,804.57 when [Appellant] ordered the stop draft, more than enough funds to cover [C]heck No. 432. Lastly, Commonwealths' Exhibit "5" is a copy of the credit union's form "Stop Payment request" that [Appellant] completed on August 24, 2021[,] for [C]heck No. 432 … payable to McChesney Motors. [Appellant] incurred a $20.00 service charge to his account when he made this request. *Id.* at 20-25.

Trial Court Opinion, 8/8/24, at 1-2 (footnote added).

At the conclusion of trial, the trial court convicted Appellant of the above-described charge.[7] That same date, the trial court sentenced Appellant to pay court costs and restitution. Appellant timely appealed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following issue:

Whether the trial court abused its discretion, or erred as a matter of law, by finding [Appellant] guilty when the Commonwealth did not prove beyond a reasonable doubt the required element as provided under 18 Pa.C.S.A. § 4105[,] bad checks, that the check would not be honored by the drawee when issued?

---

[7] The Commonwealth's motion to amend did not address Appellant's misdemeanor theft of services charge. Nevertheless, at trial, the Commonwealth represented that "the Commonwealth amended the information to make this a summary case[.]" N.T., 4/19/24, at 3. The trial court dismissed Appellant's theft of services charge on April 25, 2024.

Appellant's Brief at 7 (some capitalization modified).

Appellant challenges the sufficiency of the evidence supporting his conviction of bad checks.

> Challenges to the sufficiency of the evidence are governed by our familiar and well-established standard of review. We consider the evidence presented at trial *de novo*. We are obliged to evaluate that evidence in the light most favorable to the Commonwealth, as the verdict winner, and we draw all reasonable inferences therefrom in the Commonwealth's favor. Through this lens, we must ascertain whether the Commonwealth offered evidence sufficient to prove all of the elements of the crime at issue beyond a reasonable doubt.

***Commonwealth v. Roberts***, ____ A.3d ____, 16 WAP 2023, *10 (Pa. filed Jan. 22, 2025). "[T]he Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence[.]" ***Commonwealth v. Yandamuri***, 159 A.3d 503, 514 (Pa. 2017) (citation omitted). Further, "[t]his Court may not substitute its judgment for that of the factfinder. If the record contains support for the verdict, it may not be disturbed." ***Commonwealth v. McFarland***, 278 A.3d 369, 381 (Pa. Super. 2022) (quotation omitted).

Section 4105 of the Crimes Code defines bad checks, in pertinent part, as follows: "A person commits an offense if he issues or passes a check … for the payment of money, knowing that it will not be honored by the drawee." 18 Pa.C.S.A. § 4105(a)(1). "[S]ection 4105 does not require the Commonwealth to prove an intent to defraud on the part of the defendant." ***Commonwealth v. Mutnik***, 406 A.2d 516, 518 (Pa. 1979) (footnote omitted). Instead, the Commonwealth must establish that the defendant had **present**

**knowledge** that the check would not be honored by the drawee. ***See***

***Commonwealth v. Bagari***, 579 A.2d 942, 944 (Pa. Super. 1990).

Appellant argues that placing a "stop order" on a check issued in exchange for services does not give rise to criminal culpability under the bad checks statute. Appellant's Brief at 13. Appellant opines that, instantly,

> [a]ny stoppage that occurred was not with the intent to defraud[ the victim,] and in fact was done by [] Appellant with the intent to prevent himself from being defrauded through services he believed to be faulty. This case clearly constitutes a civil disagreement on the doctrine of substantial performance and is not criminal activity. In fact, the request of a stop order on a check through a bank[]/financial institution is a legal and acceptable course of action where disputes arise.

***Id.*** at 14.

In support of his argument, Appellant relies on ***Commonwealth v. Wilkes***, 676 A.2d 266 (Pa. Super. 1996). In ***Wilkes***, the defendant operated a business engaging in the import and export of "automobile components, chemicals and related products." ***Wilkes***, 676 A.2d at 267. The defendant contracted an auto parts store to purchase motor oil for a client. ***Id.*** Significantly, "the purchase order [for the motor oil] indicated that [the defendant] required the oil to be from new stock with the current National Football League advertising program." ***Id.*** at 268 (record citation omitted). The defendant "dispatched a truck to [the auto parts store's] warehouse to pick up the oil, and [the defendant] drove to the [auto parts store's] headquarters[,]" where he issued a check for the purchase price of the motor

oil. *Id.* The evidence at trial established that the defendant's bank account had sufficient funds to clear the check. *Id.*

As the defendant was loading the motor oil for shipment to his client, he noticed that the product did not meet his contracted specifications. *Id.* The defendant engaged in unsuccessful negotiations with representatives of the auto parts store for a reduction in price. *Id.* As a result, six days after its issuance, the defendant stopped payment on the check. *Id.* The Commonwealth charged the defendant with theft by unlawful taking and theft by deception, and a jury convicted the defendant of both charges. *Id.* at 268.

In addressing the sufficiency of the evidence underlying the defendant's convictions, the *Wilkes* Court concluded

> that the evidence fail[ed] to demonstrate that [the defendant] took the oil with the intention of depriving [the auto parts store] of it or that [the defendant] obtained the oil by deception, intending not to pay [the auto parts store]. Undisputed testimony revealed that [defendant] issued [the auto parts store] a "good" check for the full purchase price of the oil. Further, [the defendant] did not stop payment on that check until after several days of negotiations with [the auto parts store] regarding a reduction in the price of the oil had produced no agreement. Significantly, at the time [the defendant] stopped payment on the check, the account had more than sufficient funds to satisfy the instrument.

*Id.* at 269.

Instantly, the trial court rejected Appellant's sufficiency argument:

> The evidence admitted at trial shows that [Appellant] ordered the stop payment the same day that he issued the check to [the victim]. The trial court concluded that the action indicates that [Appellant] intended that [the victim] not be paid for services and parts rendered in the repair of the motorcycle[. T]herefore,

[Appellant] knew that the check would not be honored by the [financial institution]. Thereafter, the evidence shows that [Appellant] refused to talk to [the victim] to clear up this matter[,] which led to the filing of the criminal charges herein.

Trial Court Opinion, 8/8/24, at 3.

Upon review, the trial court's factual findings are supported by the record and its legal conclusion is sound. **See Roberts**, 16 WAP 2023, at *10. The undisputed evidence at trial established that Appellant issued the victim a check in exchange for services, and directed his financial institution to stop payment on the check the same day. Appellant did not testify at trial, and there was no evidence that Appellant communicated any dissatisfaction with the work to the victim. **See** N.T., 4/19/24, at 10; **see also id.** at 11 (the victim testifying that Appellant "seemed perfectly happy riding" his motorcycle away from the victim's business).

That Appellant had sufficient funds in his account to satisfy his financial obligation is not dispositive. Because Appellant stopped payment on the check **immediately** after passing it, the trial court reasonably inferred that Appellant had present knowledge that his check would not be honored. **See Commonwealth v. Horlick**, 296 A.3d 60, 63 (Pa. Super. 2023) ("[A]s there is rarely direct evidence of a defendant's state of mind, intent is often established through circumstantial evidence alone."); **see also Commonwealth v. McBride**, 595 A.2d 589, 591 (Pa. 1991) ("An inference is no more than a logical tool enabling the trier of fact to proceed from one

fact to another, if the trier believes that the weight of the evidence and the experiential accuracy of the inference warrant so doing.").

Appellant's reliance on *Wilkes* is misplaced, because 1) it does not involve a sufficiency challenge to a **bad checks** conviction, and 2) it is factually distinguishable. Unlike the defendant in *Wilkes*, there is no evidence that Appellant was engaged in an ongoing business dispute with his victim. Rather, Appellant issued a check to secure his motorcycle, and then stopped payment on the check to enjoy the benefits of the victim's parts and labor for free.

Accordingly, Appellant's sufficiency challenge lacks merit, and we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 02/24/2025